[Cite as *State v. Burge*, 2017-Ohio-5836.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

      Appellee/Cross-Appellant

      v.

JAMES M. BURGE

      Appellant/Cross-Appellee

C.A. No.     16CA010936

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    14-CR-090303

DECISION AND JOURNAL ENTRY

Dated: July 17, 2017

SCHAFER, Presiding Judge.

{¶1} Defendant-Appellant/Cross-Appellee, James Burge, and Plaintiff-Appellee/Cross-Appellant, the State of Ohio, appeal the judgment of the Lorain County Court of Common Pleas. For the reasons set forth below, we affirm in part, dismiss in part, reverse in part, and remand.

I.

{¶2} Burge was a judge on the Lorain County Court of Common Pleas from 2007 until 2013. This matter involves Burge's criminal convictions for falsifying and tampering with the 2011, 2012, and 2013 financial disclosure forms that he, as an elected official, was required to file with the Ohio Ethics Commission. *See* R.C. 102.02. The financial disclosure forms require public officials to disclose various categories of income, investments, real estate holdings, gifts, and reimbursement payments in an effort to divulge potential conflicts of interest that a public official may have in the performance of his or her official duties.

{¶3} In 1997, Burge, his wife, Susan Burge, and Attorney Michael Tully, formed a limited liability company known as Whiteacre North, LLC ("Whiteacre North"). Whiteacre North held only one asset, a commercial building located on Broadway Avenue in Lorain, Ohio ("commercial building"). Lorain National Bank held the note and mortgage for this commercial building and Burge, Burge's wife, and Tully were listed as guarantors on that mortgage. As its sole business venture, Whiteacre North rented office space in the commercial building to local attorneys. Burge was a tenant of the commercial building until he was elected judge in 2006.

{¶4} In 2006, Burge was elected to a six-year term as a judge on the Lorain County Court of Common Pleas. On January 11, 2007, roughly one week after taking the bench, the Burges and Tully entered into a purchase agreement with Shimane and Azuree Smith, wherein they assigned their respective interests in Whiteacre North to the Smiths. The assignment provided that the Smiths would pay all of the building's expenses. The assignment further provided that the contract period was to continue for four years. As such, pursuant to the contract, on or before January of 2011, the Smiths were required to either purchase the building or sell the building to a third party and to make a $35,000.00 lump-sum payment to both Burge and Tully.

{¶5} However, although Burge assigned his interest in Whiteacre North to the Smiths, Burge never notified Lorain National Bank of the assignment, nor was the assignment ever recorded. Thus, despite Burge's assignment of his interest in Whiteacre North to the Smiths, Lorain National Bank still considered Burge as a guarantor on the commercial building's mortgage and the bank could have held Burge personally liable if the Smiths ever defaulted on the building's mortgage payments. Bank documents also reveal that Burge was named as a

signatory on Whiteacre North's bank account until 2012 and that the bank considered Burge to be an owner of Whiteacre North continuously from 1997 until 2011.

{¶6} In January of 2011, the Smiths were experiencing financial hardship and were unable to complete the terms of the purchase agreement. At the end of the four-year contract period, the Smiths' interest in Whiteacre North reverted back to Tully and the Burges. A few months later, on June 7, 2011, Burge assigned his interest in Whiteacre North, including his rights under the contract with the Smiths, to his wife for the sum of $1.00. It is undisputed that from the time Burge regained his interest in Whiteacre North in January of 2011 until the time that he assigned his interest in Whiteacre North to his wife in June of 2011, Burge approved fee applications for appointed attorneys who were tenants of the commercial building in question. On June 20, 2011, Burge sent a letter to Dennis Will, the Lorain County Prosecutor, informing him that he had assigned his interest in Whiteacre North to his wife and that he no longer had any interest in the company or in the commercial building.

{¶7} While serving as a judge on the Lorain County Court of Common Pleas from 2007 until 2013, Burge filed annual financial disclosure forms with the Ohio Ethics Commission, as was mandated by state law. *See* R.C. 102.02. With respect to Burge's 2011, 2012, and 2013 financial disclosure forms,[1] an investigation revealed that Burge did not fully divulge requisite information. Specifically, with respect to his 2011 financial disclosure form, Burge did not list Lorain National Bank as a creditor, did not list Whiteacre North as a business that either he or his wife operated, and did not list the commercial building as real estate in which he had an ownership interest. With respect to his 2012 financial disclosure form, although Burge did list

---

[1] Annual financial disclosure forms relate to activity that occurred during the previous calendar year. For example, Burge's 2011 financial disclosure form concerns activity that occurred in calendar year 2010.

Lorain National Bank as a creditor, he neither listed Whiteacre North as a business that either he or his wife operated, nor did he list the commercial building as real estate in which he had an ownership interest. With respect to his 2013 financial disclosure form, Burge listed Lorain National Bank as a creditor, but again failed to list the commercial building as real estate in which he had an ownership interest, and failed to list Whiteacre North as a business that either he or his wife operated. Burge contends that the omissions were unintentional.

{¶8} On August 20, 2014, roughly nine months after the Ohio Attorney General Office initiated its investigation into the veracity of his financial disclosure forms, Burge filed amended financial disclosure forms for the years 2011, 2012, and 2013. Specifically, all of Burge's amended filings listed Lorain National Bank as a creditor, Whiteacre North as a business that he or his wife operated, and the commercial building as real estate in which he had an ownership interest.

{¶9} On September 24, 2014, a Special Grand Jury in Lorain County issued a 12-count indictment charging Burge with the following: three counts of falsification (Counts I, V, and IX) in violation of R.C. 2921.13(A)(7), a first-degree misdemeanor; three counts of tampering with records (Counts II, VI, and X) in violation of R.C. 2913.42(A)(1), a third-degree felony; three counts of soliciting improper compensation (Counts III, VII, and XI) in violation of R.C. 2921.43(A)(1), a first-degree misdemeanor; and three counts of having an unlawful interest in a public contract (Counts IV, VIII, and XII) in violation of R.C. 2921.42(A)(1), a fourth-degree felony. Burge pleaded not guilty to the counts contained within the indictment and the matter proceeded through the pretrial process. The State ultimately dismissed one count of soliciting improper compensation (Count XI) and one count of having an unlawful interest in a public contract (Count XII) prior to trial.

**{¶10}** A five-day jury trial commenced on April 9, 2015. During the course of trial, the State presented seven witnesses. At the close of the State's case-in-chief, Burge made a Crim.R. 29 motion for judgment of acquittal. The trial court granted Burge's Crim.R. 29 motion in part, dismissing the two remaining counts of soliciting improper compensation (Counts III and VII), as well as the two remaining counts of having an unlawful interest in a public contract (Counts IV and VIII). At the close of all evidence, the jury deliberated and ultimately found Burge guilty of the six remaining counts.[2]

**{¶11}** After the jury returned its verdict, Burge made a motion to have the trial court reduce his tampering with records convictions (Counts II, VI, and X) from felonies to misdemeanors pursuant to *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256. The trial court granted Burge's motion over the State's objection. Burge also moved the trial court to merge his falsification convictions with his tampering with records convictions for purposes of sentencing, arguing that those offenses are allied offenses of similar import. The trial court denied Burge's motion to merge his convictions. On May 26, 2015, the trial court sentenced Burge and issued its judgment entry of conviction and sentence that same day.

**{¶12}** Burge filed a notice of appeal from the trial court's May 26, 2015 judgment entry, but this Court dismissed the attempted appeal for lack of a final appealable order. *See State v. Burge*, 9th Dist. Lorain No. 15CA010798 (Oct. 23, 2015). The trial court held a resentencing hearing on remand, at which time the trial court sentenced Burge according to law. The trial court issued its sentencing entry on January 12, 2016. Burge filed a notice of appeal from the trial court's January 12, 2016 judgment entry, but this Court again dismissed Burge's attempted

---

[2] The jury found Burge guilty of three counts of falsification (Counts I, V, and XI) and three counts of tampering with records (Counts II, VI, and X).

appeal for lack of jurisdiction on the basis that the appeal was not filed in accordance with App.R. 4(A). *See State v. Burge*, 9th Dist. Lorain No. 16CA010921 (Mar. 18, 2016).

{¶13} Burge ultimately filed a motion for leave to file a delayed appeal pursuant to App.R. 5, which this Court granted. *See State v. Burge*, 9th Dist. Lorain No. 16CA010936 (Apr. 25, 2016). On appeal, Burge raises three assignments of error for our review. The State has filed a cross-appeal and raises one assignment of error for our review.

II.

**Burge's First Assignment of Error**

**Appellant's convictions on counts 1, 5 and 9 of the indictment (falsification) and on counts 2, 6 and 10 (tampering with records) are not supported by sufficient evidence, and the trial court erred in overruling [A]ppellant's Crim.R. 29 motion for judgment of acquittal at the close of the [S]tate's case and at the close of the evidence.**

{¶14} In his first assignment of error, Burge argues that his criminal convictions for falsification and tampering with records are supported by insufficient evidence. We disagree.

{¶15} "'We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence.'" *State v. Smith*, 9th Dist. Summit No. 27389, 2015-Ohio-2842, ¶ 17, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "Circumstantial and direct evidence inherently possess the same probative value." *Id*. at paragraph one of the syllabus. After such an examination and taking the evidence in the light

most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. at paragraph two of the syllabus. Although we conduct de novo review when considering a sufficiency of the evidence challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775 , ¶ 33.

## A. Falsification

**{¶16}** Burge was convicted of three counts of falsification in violation of R.C. 2921.13(A)(7), which provides that "[n]o person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when * * * [t]he statement is in writing on or in connection with a report or return that is required or authorized by law." "Knowingly" is defined in former R.C. 2901.22(B)[3] as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Proof of intent is often derived from circumstantial evidence, as direct evidence will seldom be available. *State v. Tarver*, 9th Dist. Summit No. 22057, 2004-Ohio-6748, ¶ 10, citing *State v. Lott*, 51 Ohio St.3d 160, 168 (1990).

### 1. Burge Made False Statements

**{¶17}** Upon reviewing the record in this matter, we determine that the State presented sufficient evidence showing that Burge made a false statement in writing on a report that was

---

[3] R.C. 2901.22's definitions of culpable mental states, including the provision for "knowingly," were amended effective March 23, 2015. *See* Am. S.B. 361, 2014 Ohio Laws File 194. Since the charged offenses in this matter occurred before S.B. 361's effective date, we rely on the previous version of the statutory language.

required by law. Specifically, the State put forth evidence which, if believed, demonstrated that Burge filed false financial disclosure forms in 2011, 2012, and 2013, as those respective forms omitted information that Burge was obligated to divulge.

{¶18} At trial, Richard Dove, the director of the Board of Professional Conduct at the Supreme Court of Ohio, testified that all elected officials in Ohio are required by statute to file a financial disclosure form on an annual basis. Paul Nick, the executive director of the Ohio Ethics Commission, testified that because Burge signed a guaranty agreement with Lorain National Bank, Burge was required to list Lorain National Bank as a creditor on his financial disclosure forms. Mr. Nick explained that by signing the guaranty agreement, Burge and Lorain National Bank had a creditor-debtor relationship, especially since the guaranty agreement contained a confession of judgment to the debt. Mr. Nick also testified that the guaranty agreement made Burge primarily liable for the mortgage on the commercial building and that, for purposes of the guaranty agreement, Burge "[stood] in the shoes of Whiteacre North[.]" Mr. Nick further testified that the guaranty agreement contained a list of actions that the bank would consider to be a default, one of which was if Burge assigned or transferred his interest in Whiteacre North at any time. Moreover, Mr. Nick testified that even if Burge transferred his interest in Whiteacre North to a third party, Burge would still be required to list Lorain National Bank on his financial disclosure forms as long as the guaranty agreement remained in effect.

{¶19} Furthermore, Mr. Nick testified that in 2010, the Ohio Ethics Commission's website contained a "frequently asked questions" page, wherein it explained that an elected official is required to disclose the names of creditors transacting business in Ohio to whom he or she owes or owed a debt of more than $1,000.00 at any time during the calendar year, either in their own name, or in the name of another person. For example, if an elected official would be

responsible for repaying a debt when the primary borrower defaults on a loan payment, then the elected official would need to disclose that lender as a creditor. According to Mr. Nick, the Ohio Ethics Commission's website provided an example which stated that a cosigner of a student loan for a family member must disclose the lender of the student loan as a creditor on his or her financial disclosure forms, regardless of whether a default on the loan had actually occurred. Mr. Nick emphasized that such a disclosure is required because the mere fact that the relationship exists (i.e. the *potential* conflict of interest) is what is critical for purposes of the financial disclosure forms. Mr. Nick concluded his testimony by stating that Burge was required to list Lorain National Bank as a creditor on his 2010 financial disclosure form. Mr. Dove also testified that if a judge is personally liable on a mortgage to a bank, that judge would need to list that information on his or her financial disclosure form.

{¶20} Regarding the specific representations made within Burge's financial disclosure forms, Mr. Dove testified that Burge did not list Lorain National Bank as a creditor to whom he owed more than $1,000.00 in 2010 on his 2011 financial disclosure form. Thomas Brokamp, a special agent with the Ohio Bureau of Criminal Investigation's special investigations unit, testified that the commercial building in question was worth over $1,000.00 and that the original mortgage amount for the commercial building totaled $365,000.00. Christian Athey, a vice president of Lorain National Bank's commercial loan department, testified that Burge was a guarantor to the commercial building's mortgage and that the bank could have held Burge personally liable if payments on the building's mortgage ever ceased being made.

{¶21} Moreover, with regard to the content of the 2012 and 2013 financial disclosure forms, Mr. Dove testified that if a judge or a judge's spouse has an ownership interest in real property or a limited liability company during a given filing cycle, the judge would need to list

that information on his or her disclosure form for that filing cycle. Mr. Dove testified that a judge would need to list this information on his or her financial disclosure form even if the judge or the judge's spouse acquired the real property or LLC and divested themselves of it during that same filing cycle.

{¶22} Mr. Dove further testified that on his 2011 and 2012 financial disclosure forms, Burge represented that he had no real estate that he was required to list. Agent Brokamp buttressed Mr. Dove's testimony on this point by testifying that Burge failed to list the commercial building as real estate in which he had an interest on his 2011, 2012, and 2013 financial disclosure forms. Agent Brokamp testified that Burge also failed to list Whiteacre North as a business that either he or his wife operates on his 2011, 2012, and 2013 financial disclosure forms. Although Burge argues that he did not have an ownership interest in either Whiteacre North or the commercial property following the assignment of his interest in the company to the Smiths in 2007, Prosecutor Will testified that he received a letter from Burge that was dated June 11, 2011, wherein Burge explained that he had reacquired an interest in Whiteacre North on February 12, 2011. Thus, Burge's own letter to Prosecutor Will indicates that the purchase agreement between Burge and the Smiths was never completed and that Burge possessed at least a contingency interest in Whiteacre North and the commercial building at all times between 2007 until 2011.

{¶23} Lastly, Burge argues on appeal that he was not required to list Whiteacre North as a business that either he or his wife operated since Whiteacre North did not constitute a business. We reject this argument on its face, especially considering Whiteacre North was registered as a limited liability company. *See MFP Eagle Highlands, LLC v. American Health Network of Indiana, LLC*, S.D.Ohio No. 1:07-CV-0424-DFH-WGH, 2009 WL 77679, *5 (Jan. 9, 2009) ("A

limited liability company is generally considered a business association. Black's Law Dictionary has an entry for 'business association' that refers the reader to 'business enterprise,' which is defined as: 'The field of law dealing with various forms of business, such as corporations, limited-liability companies, and partnerships.'"), citing Black's Law Dictionary 157 (8th Ed.2004).

{¶24} Based on the foregoing evidence, we conclude that the State presented sufficient evidence that Burge made a false statement in writing on a report that was required by law. That is, Burge failed to disclose mandatory information on his 2011, 2012, and 2013 financial disclosure forms.

## 2. Burge Acted Knowingly

{¶25} With regard to the mens rea component of the falsification statute, we determine that the State presented sufficient evidence demonstrating that Burge knowingly made the false statements on his 2011, 2012, and 2013 financial disclosure forms.

### a. 2011 Financial Disclosure Forms

{¶26} At trial, Mr. Athey testified that although the Burges and Tully assigned their respective interests in Whiteacre North to the Smiths in January of 2007, the bank was unaware of this assignment since Burge never informed the bank of the assignment and never filed the assignment with the county recorder's officer. As such, Mr. Athey testified that despite the assignment to the Smiths, Burge was always the principal guarantor of the commercial property's mortgage and that the bank could have held Burge personally liable if the mortgage payments stopped being made. Mr. Athey also testified that Burge was listed as a signatory on Whiteacre North's bank account until 2012, and that Lorain National Bank considered Burge to be an owner of the commercial building continuously from 1997 through 2011.

**{¶27}** Moreover, as noted above, Mr. Athey and Agent Brokamp both testified that Burge's 2011 financial disclosure form for calendar year 2010 failed to list Lorain National Bank as a creditor, the commercial building as real estate in which he had an interest, and Whiteacre North as a company that either Burge or Burge's wife operated. Mr. Dove also testified that Burge signed his 2011 financial disclosure form despite a warning statement admonishing public officials that anyone who fails to file a complete financial disclosure form by the appropriate deadline may be subject to criminal penalty. Lastly, on August 20, 2014, Burge filed an amended financial disclosure form for filing year 2011 wherein he listed Lorain National Bank as a creditor and divulged the commercial building and Whiteacre North.

**{¶28}** Viewing this evidence in the aggregate and in a light most favorable to the State, we determine that any rational trier of fact could have found beyond a reasonable doubt that Burge knowingly falsified his 2011 financial disclosure form.

### b. 2012 & 2013 Financial Disclosure Forms

**{¶29}** Turning to Burge's 2012 and 2013 financial disclosure forms, we likewise conclude that the State put forth sufficient evidence at trial demonstrating that Burge acted knowingly when he omitted requisite information from his 2012 and 2013 financial disclosure forms.

**{¶30}** At trial, Prosecutor Will testified that upon Burge's election to the Lorain County Court of Common Pleas in 2007, he was aware of Burge's potential proprietary involvement with the commercial building whose tenants included a number of criminal defense attorneys. Prosecutor Will testified that his office refused to waive this potential conflict of interest any time that one of the building's tenants appeared in Burge's courtroom during a criminal proceeding. Prosecutor Will further testified that Burge sent him a letter dated June 11, 2011,

wherein Burge explained that the Smiths' interest in Whiteacre North vested in him, his wife, and Tully on February 12, 2011. Burge explained in this letter that he transferred all of his interest in Whiteacre North to his wife on June 7, 2011, and that he no longer possessed any interest in the limited liability company or in the commercial building. As noted earlier, however, despite the fact that Burge reacquired an interest in Whiteacre North in 2011 and subsequently transferred that interest to his wife that same year, Burge did not list Whiteacre North or the commercial property on his 2012 or 2013 financial disclosure forms. Mr. Dove testified that Burge signed his 2012 and 2013 financial disclosure forms immediately beneath a warning advising all public officials that any person who fails to file a complete statement by the appropriate deadline may be subject to criminal penalty. Lastly, Mr. Dove testified that on August 20, 2014, Burge filed amended financial disclosure forms for filing years 2012 and 2013 wherein he divulged the commercial building and Whiteacre North.

{¶31} Viewing this evidence in a light most favorable to the State, we determine that any rational trier of fact could have found beyond a reasonable doubt that Burge knowingly falsified his 2012 and 2013 financial disclosure forms.

## B. Tampering with Records

{¶32} Burge was also convicted of three counts of tampering with records in violation of R.C. 2913.42(A)(1), which provides that "[n]o person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall * * * [f]alsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record[.]"

{¶33} "'Privilege' means an immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of

necessity." R.C. 2901.01(A)(12). R.C. 2913.01(B) defines "defraud" as "to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." "'Deception' means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another[.]" R.C. 2913.01(A). "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." Former R.C. 2901.22(A).

{¶34} At trial, Mr. Athey testified that despite Burge's assignment of Whiteacre to the Smiths in 2007, Lorain National Bank was unaware of this assignment and Burge was still continuously a guarantor on the commercial building's mortgage. Similarly, Agent Brokamp testified that his investigation into the matter revealed that Burge was personally liable for the mortgage in the event of a default on the mortgage payments.

{¶35} Moreover, Paul Griffin and J. Anthony Rich, two attorneys who rented office space in the commercial building from Whiteacre North, testified on behalf of the State. Mr. Rich testified that he moved into the commercial building in March of 2007 and paid rent regularly to Whiteacre North. Mr. Griffin testified that he was a tenant in the commercial building from October 2003 until December 2014 and that he also regularly paid rent to Whiteacre North. Mr. Griffin testified that Whiteacre North owned the commercial building and that he believed Burge was an owner of Whiteacre North. Mr. Griffin and Mr. Rich both testified that Burge approved their applications for appointed counsel fees during his judicial

tenure. Specifically, Mr. Rich testified that Burge approved multiple fee applications for him in 2011 for legal work that he performed between 2010 and 2011. Mr. Griffin also testified that Burge approved fee applications for him in 2011. Mr. Griffin added that if he did not make money, he would have been unable to pay his rent, which would thus prevent Whiteacre North from making money.

{¶36} Viewing this evidence in a light most favorable to the State, we determine that any rational trier of fact could have found beyond a reasonable doubt that Burge was guilty of tampering with records in violation of R.C. 2913.42(A)(1). If believed, the aforementioned evidence demonstrates that Burge knowingly obtained a benefit for himself, namely a revenue stream for tenants of the commercial building for which he was the primary guarantor. This evidence, if believed, also demonstrates that Burge obtained this benefit through deception, namely by purposely not disclosing the requisite information on his 2011, 2012, and 2013 financial disclosure forms which would have placed the public on notice that he had a potential conflict of interest with certain criminal defense attorneys. Lastly, as noted earlier in this opinion, the evidence adduced at trial, if believed, demonstrates that Burge, knowing that he had no privilege to do so, falsified his 2011, 2012, and 2013 financial disclosure forms.

{¶37} Burge's first assignment of error is overruled.

### Burge's Second Assignment of Error

**Appellant's conviction[s] [are] against the manifest weight of the evidence.**

{¶38} In his second assignment of error, Burge argues that his convictions are against the manifest weight of the evidence. Specifically, Burge argues that the jury clearly lost its way when it found that he falsified his financial disclosure forms in order to defraud the Ohio Ethics Commission. We disagree.

**{¶39}** When applying the manifest weight standard, appellate courts are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson,* 9th Dist. Summit No. 26900, 2013–Ohio–5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

**{¶40}** Having reviewed the record, we cannot conclude that the jury lost its way when it determined that Burge was guilty of falsification and tampering with records. The jury heard testimony that Burge omitted necessary information from his 2011, 2012, and 2013 financial disclosure forms. Moreover, the manner in which the State made its case was such that the jury was able to infer from the timeline of events that Burge acted knowingly when he made false statements on his respective financial disclosure forms. Finally, the jury heard testimony from Mr. Rich and Mr. Griffin from which it could infer that Burge knowingly obtained a benefit from falsifying his 2011, 2012, and 2013 financial disclosure forms. Although Burge presented some evidence that the omissions on his financial disclosure forms were unintentional, the jury ultimately chose to believe the State's evidence over Burge's.

**{¶41}** "This Court has repeatedly held that the trier of fact is in the best position to determine the credibility of witnesses and evaluate their testimony accordingly." *State v. Johnson*, 9th Dist. Summit No. 25161, 2010–Ohio–3296, ¶ 15. We "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact

chose to believe the State's version of events over another version." *State v. Barger*, 9th Dist. Medina No. 14CA0074–M, 2016–Ohio–443, ¶ 29. Because Burge has not shown that this is the exceptional case where the jury lost its way by convicting him, we reject his argument that his conviction is against the manifest weight of the evidence. *See Otten* at 340.

{¶42} Burge's second assignment of error is overruled.

### Burge's Third Assignment of Error

**The trial court committed prejudicial error in denying [A]ppellant's motion to merge counts 1 and 2, counts 5 and 6, and counts 9 and 10 of the indictment for sentencing, as these counts charge allied offenses of similar import, based upon offense conduct. []**

{¶43} In his third assignment of error, Burge argues that the trial court erred by failing to merge his convictions for falsification and tampering with records. He was found guilty of both counts for all three financial disclosure reports, but he argues that he should have been convicted of only one offense for each annual report.

{¶44} R.C. 2941.25 describes the circumstances under which a defendant may be convicted on multiple offenses:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

In order to determine whether multiple offenses are allied offenses of similar import, courts must consider the nature of the defendant's conduct. "If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate,

identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 25.

**{¶45}** Prior to sentencing, Burge filed a motion arguing that his convictions for falsification and tampering with records should merge as they are allied offenses of similar import. At Burge's sentencing hearing, the trial court heard argument from the parties on this particular issue, after which the trial court summarily denied Burge's motion and proceeded to sentence him according to law.

**{¶46}** Here, it is unclear from the face of the record whether these offenses could not merge. Although the parties presented arguments to the trial court on whether or not Burge's convictions should merge, the trial court did not engage in any meaningful analysis on the record. Consequently, we remand this matter to the trial court for it to analyze and determine on the record whether Burge's falsification and tampering with records convictions are allied offenses of similar import.

**{¶47}** Burge's third assignment of error is sustained insofar as the trial court did not conduct a substantive merger analysis on the record for this Court to review.

### State's Assignment of Error

**The trial court erred when it reduced Appellant's convictions for Tampering with Records from felonies to misdemeanors pursuant to R.C. 2945.75.**

**{¶48}** In its sole assignment of error, the State argues that the trial court erred by reducing Burge's convictions for tampering with records from felonies to misdemeanors pursuant to the Supreme Court of Ohio's decision in *Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256.

**{¶49}** This Court questions its jurisdiction to consider the State's cross-appeal. This Court previously issued a show cause order instructing the parties to address this Court's jurisdiction to consider the State's cross-appeal since it was unclear whether the cross-appeal was timely filed pursuant to App.R. 4(B). *See State v. Burge*, 9th Dist. Lorain No. 16CA010936 (Apr. 27, 2016). After reviewing the parties' filings, this Court provisionally concluded that the State's cross-appeal may proceed, but reserved the right to revisit the issue of the timeliness of the State's cross-appeal. *See State v. Burge*, 9th Dist. Lorain No. 16CA010936 (July 1, 2016). We elect to do so at this time.

**{¶50}** When jurisdiction appears uncertain, a court of appeals must raise issues of jurisdiction sua sponte. *Kouns v. Pemberton*, 84 Ohio App.3d 499, 501 (4th Dist.1992), citing *In re Murray*, 52 Ohio St.3d 155, 159, fn. 2 (1990). The Supreme Court of Ohio has held that an untimely notice of appeal does not invoke this Court's jurisdiction. *See Transamerica Ins. Co. v. Nolan*, 72 Ohio St.3d 320 (1995), syllabus.

**{¶51}** Here, the trial court issued its sentencing entry on January 12, 2016. On April 1, 2016, Burge filed a notice of appeal along with a motion for leave to file a delayed appeal. Subsequently, on April 13, 2016, the State filed a notice of cross-appeal from the trial court's January 12, 2016 judgment pursuant to App.R. 4(B) and App.R. 14(C), wherein the State noted it was "appealing as a matter of right under R.C. 2953.08(B)(2)." This Court granted Burge's motion for leave to file a delayed appeal on April 26, 2016.

**{¶52}** Pursuant to App.R. 3(A), an "appeal as of right" shall be taken by filing a notice of appeal with the clerk of the trial court within the time allowed by App.R. 4. Regarding a cross-appeal, App.R. 3(C)(1) states that "[a] person who intends to defend a judgment or order against an appeal taken by an appellant and who also seeks to change the judgment or order * * *

shall file a notice of cross appeal within the time allowed by App.R. 4." According to App.R. 4(A)(1), "a party who wishes to appeal from an order that is final upon its entry shall file the notice of appeal required by App.R. 3 within 30 days of that entry." One exception to the appeal time provided in App.R. 4(A)(1) is in the case of cross-appeals. *See* App.R. 4(B)(1). App.R. 4(B)(1), which addresses time limits for filing a cross-appeal, states, "[i]f a notice of appeal is *timely* filed by a party, another party may file a notice of appeal within the appeal time period otherwise prescribed by [App.R. 4] or within ten days of the filing of the first notice of appeal." (Emphasis added).

**{¶53}** Upon review of the record in this matter, we conclude that the State's notice of cross-appeal was untimely filed. As previously noted, the trial court's sentencing entry, which was a final appealable order, was filed on January 12, 2016. However, the State did not file its notice of cross-appeal until April 13, 2016, more than 30 days after the trial court issued the January 12, 2016 sentencing entry. Moreover, because Burge initially filed an untimely notice of appeal and was required to seek leave from this Court prior to proceeding with the instant appeal, his notice of appeal was not timely filed. Thus, App.R. 4(B)(1) is inapplicable. *See State v. Jones*, 8th Dist. Cuyahoga No. 77657, 2001 WL 605406, *4, fn. 1 (May 24, 2001) (Kilbane, J., Dissenting) (opining that the State would not be entitled to a cross-appeal from a defendant's delayed appeal under App.R. 4(B)(1)). As such, because the State did not take an appeal as of right within the time allowed by App.R. 4 and has no right to take a delayed appeal, *see* App.R. 5, we conclude that the State's notice of cross-appeal was not timely filed and that this Court is without jurisdiction to consider the State's cross-appeal.

**{¶54}** The State's cross-appeal is dismissed.

III.

**{¶55}** Burge's first and second assignments of error are overruled and his third assignment of error is sustained insofar as the trial court failed to properly consider the issue of merger. The State's cross-appeal is dismissed. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and this matter is remanded for further proceedings consistent with this opinion.

Appeal dismissed in part,<br>
and judgement affirmed in part,<br>
reversed in part,<br>
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

MICHAEL E. STEPANIK, Attorney at Law, for Appellant/Cross-Appellee.

MIKE DEWINE, Attorney General, and MATTHEW DONOHUE and MARGARET TOMARO, Assistant Attorneys General, for Appellee/Cross-Appellant.