In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1435

Marilyn Pena, Administratrix of the Estate of
Hugo Pena, Deceased, and on her own behalf,
and Jeremy PENA, et al.,

Plaintiffs-Appellants,

v.

Greg Leombruni and Richard Meyers, individually
and in their official capacity as employees of
the Winnebago County Sheriff's Department, and
County of Winnebago,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 95 C 50271--Philip G. Reinhard, Judge.

Argued October 29, 1999--Decided December 30, 1999

   Before Posner, Chief Judge, and Flaum and Diane P.
Wood, Circuit Judges.

   Posner, Chief Judge.  This is a civil rights
suit, charging the use of excessive force by
police in violation of the Fourth Amendment,
Graham v. Connor, 490 U.S. 386, 395 (1989), held
applicable to the states through the due process
clause of the Fourteenth Amendment. The jury
brought in a verdict for the defendants; and
construed favorably to the verdict, the facts are
as follows. Leombruni, a deputy sheriff of
Winnebago County, Illinois, responded to a
dispatch that a man, later identified as the
plaintiffs' decedent, Pena, was "acting crazy,"
was shoplifting, and was fighting with the shop's
employees. Pena fled upon Leombruni's arrival,
but later turned and (with his dog) confronted
Leombruni, who pepper sprayed the two of them and
told Pena that he was under arrest. Pena again
fled, but then stopped and picked up a chunk of
concrete and advanced toward Leombruni, who drew
his pistol and told him to put the chunk down.
Leombruni backpedaled but when Pena was within
five to ten feet of him shot and killed Pena.

The sheriff's department instructs its officers that they are not to use deadly force unless in imminent danger of death or great bodily harm. But it has issued no instructions with regard to the use of force against people who appear to be crazy, and this gap (if that is how it should be regarded) is the principal basis of liability advanced by the plaintiffs. They argue that Leombruni's shooting Pena was excessive given Pena's apparent irrationality, and that the sheriff (another defendant) violated Pena's rights by failing to issue instructions on dealing with such people.

The district judge granted the sheriff's motion for a directed verdict, and this was clearly correct. A failure to instruct police officers can, it is true, exhibit a deliberate indifference to the danger that armed police can pose to the constitutional rights of citizens and if it does is actionable under 42 U.S.C. sec. 1983. E.g., City of Canton v. Harris, 489 U.S. 378, 388 (1989); Robles v. City of Fort Wayne, 113 F.3d 732, 735 (7th Cir. 1997); Burge v. Parish of St. Tammany, 187 F.3d 452, 472 (5th Cir. 1999). A clear case would be a failure to instruct the police that they are not to use deadly force except to prevent a killing, or the infliction of other great bodily harm. City of Canton v. Harris, supra, 489 U.S. at 390 n. 10. But failing merely to instruct police on the handling of dangerous people who appear to be irrational cannot amount to deliberate indifference, at least on the facts presented in this case. The sheriff had announced a policy that, in accordance with cases such as Tennessee v. Garner, 471 U.S. 1, 3 (1985); Plakas v. Drinski, 19 F.3d 1143, 1146 (7th Cir. 1994), and Russo v. City of Cincinnati, 953 F.2d 1036, 1045 (6th Cir. 1992), the deputies were not to use deadly force unless they (or other persons) were threatened by death or great bodily harm, and this policy covered the case of the crazy assailant, giving him all the protection to which constitutional law entitled him. Maybe despite what we have just said it would be desirable to take special measures to render such a person harmless without killing or wounding him, Myers v. Oklahoma County Board, 151 F.3d 1313, 1320 (10th Cir. 1998); Plakas v. Drinski, supra, 19 F.3d at 1150 n. 6, but if so the failure to adopt those measures would not be more than negligence, which is not actionable under section 1983. City of Canton v. Harris, supra, 489 U.S. at 391-92; Payne v. Churchich, 161 F.3d 1030, 1042 (7th Cir. 1998); Manarite v. City of Springfield, 957 F.2d 953, 959 (1st Cir. 1992); cf. Plakas v. Drinski, supra, 19 F.3d at 1148; Myers v. Oklahoma County Board, supra, 151 F.3d at 1318-19.

Circumstances can alter cases. If Winnebago County had seen a rash of police killings of crazy people and it was well understood that these killings could have been avoided by the adoption of measures that would adequately protect the endangered police, then the failure to take these measures might, we may assume without having to decide, be found to manifest deliberate indifference to the rights of such people. Allen v. Muskogee, 119 F.3d 837, 845 (10th Cir. 1997); see also Myers v. Oklahoma County Board, supra, 151 F.3d at 1318; Robles v. City of Fort Wayne, supra, 113 F.3d at 736. But the plaintiffs made no effort to establish the premises of such an argument.

They have several complaints about the conduct of the trial and foremost among these is the trial judge's refusal to permit the plaintiffs to call as their expert witness a criminologist and former Chicago police official, David Fogel. The judge thought him incompetent to testify about the use of excessive force against a crazy person because he was not an expert on that rather esoteric issue. Under the regime of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), we must give the district judge a generous latitude in making such judgments. General Electric Co. v. Joiner, 118 S. Ct. 512, 517 (1997); Kumho Tire Co. v. Carmichael, 119 S. Ct. 1167, 1176 (1999); United States v. Romero, 189 F.3d 576, 584 (7th Cir. 1999); United States v. Triplett, 195 F.3d 990, 998 (8th Cir. 1999). But we have our doubts about the reason the judge gave for refusing to let Fogel testify. In his time with the Chicago Police Department Fogel had investigated and made recommendations concerning numerous complaints of excessive force lodged against Chicago policemen. This experience equipped him, one might have thought, to opine responsibly on the proper handling of a person who was behaving as Pena was. Cf. Kladis v. Brezek, 823 F.2d 1014, 1019 (7th Cir. 1987); but cf. Berry v. City of Detroit, 25 F.3d 1342, 1349-50 (6th Cir. 1994). The question was not, as the district judge believed, Pena's actual mental state. That was irrelevant to the reasonableness of Leombruni's action in shooting him--as would be obvious had Leombruni been in danger of being seriously injured not by Pena but by Pena's dog. Very little mentation is required for deadly action. A rattlesnake is deadly but could not form the mental state required for conviction of murder. Whatever Pena's mental problems (apparently he was high on cocaine), they were not such as to prevent him from beating Leombruni's brains out with a chunk of concrete. Leoumbruni was entitled to defend himself whether or not Pena, had he assaulted him, and been prosecuted for the offense, would have been

acquitted on the ground of insanity. Larry Alexander, "A Unified Excuse of Preemptive Self-Protection," 74 Notre Dame L. Rev. 1475, 1476 (1999); cf. Palmquist v. Selvik, 111 F.3d 1332, 1340 (7th Cir. 1997).

The intended focus of Fogel's testimony was not, however, as the judge believed, Pena's mental state. It was whether Leombruni had acted reasonably given the nature of the threat that Pena posed (that is, menacing the officer with a chunk of concrete). But expert evidence is admissible only when it will "assist" the trier of fact, Fed. R. Evid. 702; United States v. Hall, 93 F.3d 1337, 1341-44 (7th Cir. 1996), and the jury needed no help in deciding whether Leombruni was acting reasonably. Leombruni's behavior was unambiguously dangerous; the question whether the danger was sufficiently lethal and imminent to justify the use of deadly force was within lay competence.

It is unfortunate (or would have been, if there had been a need for expert evidence and Fogel had simply been unqualified to give it) that the judge did not rule on the defendants' motion in limine to exclude Fogel until the day of trial. The plaintiffs sought a continuance to enable them to find another expert, but the judge denied it. Had the judge ruled promptly on the motion to exclude Fogel, the plaintiffs would not have needed a continuance to seek out a substitute expert witness. It is highly desirable that the trial judge rule on motions in limine well before trial so that the parties can shape their trial preparations in light of his rulings without having to make elaborate contingency plans. Wilson v. Williams, 182 F.3d 562, 566 (7th Cir. 1999) (en banc); United States v. Mobley, 193 F.3d 492, 494 (7th Cir. 1999); 3 Moore's Federal Practice sec.sec. 16.74[3], 16.77[4] [d][i], [ii] (3d ed. 1997). In some cases the failure to rule promptly on motions in limine, unless the failure were rectified by the grant of a continuance, might conceivably be, or more precisely precipitate, a reversible error (the denial of the continuance). But not here. The plaintiffs had been on notice for months that their expert might be excluded, yet they did nothing to find a back up and thus mitigate the harm to them should he be excluded and a continuance denied. The more fundamental point, however, is that even at this late date they are unable to explain how an expert witness could have helped the jury decide the straightforward question whether Leombruni acted reasonably in shooting Pena.

The plaintiffs' most substantial objection to the conduct of the trial, and the only other one we need discuss, concerns the district court's

instruction that "when an officer believes that a suspect's actions places him [the officer] . . . in imminent danger of death or great bodily harm, the officer can reasonably exercise the use of deadly force." This is simply incorrect, because the officer's belief that he's in danger must be reasonable. E.g., Tennessee v. Garner, supra, 471 U.S. at 7; Deering v. Reich, 183 F.3d 645, 650 (7th Cir. 1999); Palmquist v. Selvik, supra, 111 F.3d at 1343; Jaffe v. Redmond, 51 F.3d 1346, 1353 (7th Cir. 1995), aff'd, 518 U.S. 1 (1996); Abraham v. Raso, 183 F.3d 279, 289 (3d Cir. 1999); Nelson v. County of Wright, 162 F.3d 986, 990 (8th Cir. 1998); Sigman v. Town of Chapel Hill, 161 F.3d 782, 786-87 (4th Cir. 1998). But the plaintiffs' lawyer failed to explain to the judge what was wrong with the instruction, instead merely tendering his own proposed instructions. An objection to instructions is forfeited by a failure to "stat[e] distinctly . . . the grounds of the objection." Fed. R. Civ. P. 51. It is not enough to propose a correct instruction. United States v. Linwood, 142 F.3d 418, 424 (7th Cir. 1998); Dawson v. New York Life Ins. Co., 135 F.3d 1158, 1165 (7th Cir. 1998); Smith v. Great American Restaurants, Inc., 969 F.2d 430, 436 (7th Cir. 1992). We add that the incorrect instruction could not have made a difference to the outcome, since there is no doubt that Leombruni was reasonable to anticipate that his concrete-wielding assailant posed a potentially lethal danger.

Affirmed.