837 So.2d 1049 (2002)
MIAMI-DADE COUNTY, Appellant,
v.
Arthur WALKER, Appellee.
No. 3D02-544.
District Court of Appeal of Florida, Third District.
December 26, 2002.
Rehearing and Rehearing Denied February 26, 2003.
*1050 Robert Ginsburg, Miami-Dade County Attorney, and Roy Wood, Assistant County Attorney, for appellant.
Gregg M. Goldfarb; Beverly A. Pohl and Bruce Rogow, for appellee.
Before JORGENSON, LEVY, and GERSTEN, JJ.
Rehearing and Rehearing En Banc Denied February 26, 2003.
JORGENSON, Judge.
Miami-Dade County appeals from a final judgment in favor of the plaintiff, Arthur *1051 Walker, in a civil rights action. For the reasons that follow, we reverse.
Arthur Walker suffered from schizophrenia and manic depression; he was treated with multiple psychotropic medications that kept his illnesses under control. In June, 1986, he had stopped taking his medications and was suffering from hallucinations, depression, and agitation. He was arrested on June 12, 1986, when a Metro-Dade officer responding to complaints of lewd behavior encountered Walker in the hallway of an apartment building banging himself against the wall. Walker did not reply to the officer's questions or requests, and tried to leave. Eight back-up officers arrived and, after a violent struggle with Walker, arrested him. He was charged with five counts of resisting arrest with violence and five counts of battery on a police officer.
Walker then spent two weeks in intensive care where he was treated for life-threatening injuries resulting from multiple trauma. When he recovered physically, he spent three months receiving treatment in a psychiatric unit.
Walker sued the County alleging various state common law claims, and later included a federal claim for violation of his civil rights under 42 U.S.C. § 1983. Walker alleged that the County lacked adequate policies of training and supervision of police officers in dealing with the mentally ill, and that the lack of such policies was the proximate cause of his injuries.[1]
The County moved for a directed verdict at the close of plaintiff's case in chief, and renewed its motion after the close of all the evidence. The court denied both motions.
In a special interrogatory verdict, the jury found that the police department's training program was inadequate to train the police officers how to properly respond to the mentally ill when effecting an arrest; that the failure to adequately train the officers to deal with the mentally ill amounted to deliberate indifference to the constitutional right of citizens to be free from the use of excessive force; and that the failure of the police department to adequately train its officers caused a deprivation to plaintiff of his right to be free from the excessive use of force. The County moved for judgment in accordance with its motion for directed verdict and moved for a new trial. The motion for judgment in accordance with the motion for directed verdict was granted as to plaintiff's claims arising under state law for failure to comply with presuit notice, but denied as to his federal claims. Following entry of judgment for the plaintiff, the County appeals.
We reverse, as the County was entitled to a directed verdict on two grounds:
I. As a matter of law, the County's police training, or its alleged failure to train, did not amount to deliberate indifference to the rights of the persons with whom the police come into contact;
II. Assuming, arguendo, that plaintiff met the burden of establishing deliberate indifference, plaintiff failed to establish the element of causation.

I. PLAINTIFF DID NOT ESTABLISH DELIBERATE INDIFFERENCE

The Supreme Court set forth limited circumstances when a claim for failure to train can serve as a basis of liability under 42 U.S.C. § 1983: where the municipality inadequately trains or supervises its employees; that failure to train or supervise is a municipality policy; and that policy causes the employees to *1052 violate a citizen's constitutional rights. City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388, 109 S.Ct. 1197. The Court held that deliberate indifference can arise when,
in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.
Id. at 390, 109 S.Ct. 1197.
To establish such a deliberate or conscious choice, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir.1998) (emphasis added). In this case, plaintiff presented evidence that during the 1980s, the County experienced an influx of mentally ill persons, resulting from both the Mariel boatlift and the practice of "deinstitutionalization" of mentally ill persons who were left without treatment. The plaintiff also presented into evidence a 1985 grand jury report that concluded that procedures were not in place in the County to identify and evaluate the mentally ill once they were arrested.
Plaintiff also introduced into evidence a textbook on human behavior, Understanding Human Behavior for Effective Police Work, 2d Edition, authored by Harold E. Russell and Allan Beigel, that was used to teach police recruits at the times relevant to the suit. The textbook included a chapter entitled "How to Handle the Mentally Ill." Plaintiff's expert witness, Joseph Telizese, a retired Palm Beach police chief, testified that the book was a good training document and that he would have relied upon it in establishing a program on how to deal with the mentally ill. In closing argument, plaintiff's lawyer referred to that very book, used to teach Miami-Dade police recruits, and asked jurors to "look at every single part of that text that [the officers] violated." The very evidence that plaintiff presented established that the County did in fact provide police training in dealing with the mentally ill, and that the County was not deliberately indifferent to a need for such training. It is of no legal moment that the training was for police recruits, and was not ongoing field training for police officers; or that the training could have been more intensive or, as plaintiff argues, that it could and should have included role-playing. To prove a § 1983 "failure to train" violation, it will not suffice
to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.
City of Canton, 489 U.S. at 391-392, 109 S.Ct. 1197.
*1053 In Gold v. City of Miami, the Eleventh Circuit held that plaintiff's burden to prove deliberate indifference is particularly onerous where, as in this case, there is no evidence of a prior incident in which constitutional rights were similarly violated so as to alert the municipality to the need for particular training. Gold, 151 F.3d at 1351-52. The court noted that "to date, the Supreme Court has given only a hypothetical example of a need to train being `so obvious' without prior constitutional violations: the use of force where firearms are provided to police officers." Id. at 1352 (citing City of Canton, 489 U.S. at 390, n. 10, 109 S.Ct. 1197); see also Pena v. Leombruni, 200 F.3d 1031, 1033-34 (7th Cir.1999) (Posner, J.) ("If [the County] had seen a rash of police killings of [mentally ill] people and it was well understood that these killings could have been avoided by the adoption of measures that would adequately protect the endangered police, then the failure to take these measure might, we may assume without having to decide, be found to manifest deliberate indifference to the rights of such people."), cert. denied, 530 U.S. 1208, 120 S.Ct. 2207, 147 L.Ed.2d 240 (2000); Tennant v. Florida, 111 F.Supp.2d 1326 (S.D.Fla.2000) (holding that plaintiff did not establish deliberate indifference where he failed to present evidence of prior incidents where police "were alleged to have injured a disabled person or a person recovering from cardiac surgery by handcuffing them improperly.").
The plaintiff's expert testified that in his opinion, the training provided by the County was not adequate. However, "an expert's conclusory testimony does not control this [c]ourt's legal analysis of whether any need to train and/or supervise was obvious enough to trigger municipal liability without any evidence of prior incidents putting the municipality on notice of that need." Gold, 151 F.3d at 1352 n. 13.
In sum, the plaintiff failed to establish deliberate indifference by the County, as the County did have a training program to teach police recruits how to deal with the mentally ill, and because plaintiff did not establish that the County had notice that other mentally ill persons had suffered similar constitutional violations.

II. PLAINTIFF DID NOT ESTABLISH CAUSATION

The trial court erred in denying the County's motion for directed verdict on the issue of causation. Assuming for the purpose of argument that plaintiff established the first prong of City of Canton and proved deliberate indifference, plaintiff did not establish the equally important prong of causation.
It is undisputed that plaintiff was the victim of excessive force at the hands of the individual officers. However, plaintiff did not establish that any deficiency in police training in dealing with the mentally ill was the cause in fact of his injuries. For § 1983 liability to attach, "the identified deficiency in a city's training program must be closely related to the ultimate injury.... To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983." City of Canton, 489 U.S. at 391, 109 S.Ct. 1197.
Plaintiff's own expert testified unequivocally that even if plaintiff had not been mentally ill, the force used to arrest him would have been excessive. The expert further testified that the degree of force that was permissible in arresting a mentally ill person was the same degree of force permissible in arresting a person who is not mentally ill. Plaintiff's injuries were caused by the officers' infliction of excessive force. Plaintiffs did not allege that the plaintiff's injuries were the result of the County's failure to train police officers *1054 in the use of force. Although it may be desirable to take special measures in rendering harmless a dangerous person who appears to be irrational, "failure to adopt those measures would not be more than negligence, which is not actionable under section 1983." Pena v. Leombruni, 200 F.3d 1031, 1033 (7th Cir.1999).
We reverse the judgment under review, as plaintiff failed to meet his burden of establishing either deliberate indifference or causation.
REVERSED.
NOTES
[1] The original complaint named as defendants the arresting officers as well as the County. Plaintiff voluntarily dismissed the individual defendants.