[Cite as *State v. Truckey*, 2019-Ohio-407.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-A-0076** |
| JAMES A. TRUCKEY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2016 CR 00675.

Judgment: Affirmed in part, reversed in part and remanded.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Kimberly Corral,* 4403 St. Clair Avenue, Cleveland, OH 44103 (For Defendant-Appellant).

COLLEEN MARY O'TOOLE, J.

{¶1} James Truckey appeals from the judgment of the Ashtabula County Court of Common Pleas, entered on a jury verdict, sentencing him for assault, tampering with records, tampering with evidence, and dereliction of duty. Mr. Truckey was formerly a sergeant with the Ashtabula Sheriff's Department. We affirm in part, reverse in part and remand.

{¶2} September 11, 2016, between 2:00 a.m. and 3:00 a.m., Patrolman Aaron McCracken of the Jefferson Village Police Department received a call that the alarm had gone off at the Jefferson Eagle's Club. Responding, Patrolman McCracken was checking three vehicles on the property, when an ATV pulled out from the west side of the club, onto the road, at high speed. Two men were on board: the driver, Eric Platt, and Edward Dirrigl.

{¶3} Patrolman McCracken chased the ATV at speeds reaching 80 miles per hour. He radioed for assistance. Mr. Truckey and Deputy Mullett responded in separate vehicles. Mr. Truckey attempted to block the road with his cruiser, but the ATV went around him. Shortly thereafter, Mr. Truckey and Patrolman McCracken tried to box the ATV in, but it drove into a front yard. Patrolman McCracken exited his car, and gave chase on foot, ordering Mr. Platt to stop. He did not, but made a u-turn back onto the road. Patrolman McCracken tried to pull Mr. Dirrigl off of the ATV, but failed.

{¶4} Out on the road, Mr. Truckey had exited his cruiser, and was standing behind the door. Mr. Platt sped up, and hit the door, pinning Mr. Tuckey, and knocking him down.

{¶5} The pursuit continued. Mr. Platt drove into another yard, then to a field behind it, where the ATV got stuck. Mr. Platt ran away, despite Patrolman McCracken's command to stop. Deputy Mullett chased and apprehended him. Patrolman McCracken ordered Mr. Dirrigl to the ground. Mr. Dirrigl complied, and Patrolman McCracken was handcuffing him when Mr. Truckey arrived. Mr. Truckey bent down, and hit Mr. Dirrigl with his fist, while swearing at him. Mr. Dirrigl suffered a severe cut and a broken nose. He had to see a neurologist.

{¶6}     Patrolman McCracken was wearing a body camera, which recorded the incident.  Later in the day of September 11, 2016, Mr. Truckey contacted him, and asked for a copy of the video for use in preparing his report.  Officer McCracken complied.  Mr. Truckey was supposed to put the video into evidence when he was done with it.  He did not do so, and another copy had to be obtained, eventually, by the Sheriff's department.

{¶7}     Patrolman McCracken recovered two taser cartridges at the spot where the ATV had struck Mr. Truckey's cruiser.  He spoke with Mr. Truckey, who said he had attempted to taser Mr. Platt and/or Mr. Dirrigl.  Patrolman McCracken returned the cartridges to Mr. Truckey with the understanding he would put them into evidence.  He did not.

{¶8}     November 30, 2016, the Ashtabula County Grand Jury returned an eleven count indictment against Mr. Truckey: counts one and two, felonious assault; counts three, four and five, tampering with records; count six, tampering with evidence; and counts seven, eight, nine, ten and eleven, dereliction of duty.  Mr. Truckey pleaded not guilty.  June 16, 2017, the state moved to dismiss counts two, four, eight, and ten, which motion was granted June 20, 2017.

{¶9}     Jury trial commenced the same day.  The verdict was filed June 28, 2017.  Mr. Truckey was found guilty of assault, a lesser included offense of felonious assault; not guilty of count three, tampering with records; guilty on count five, tampering with records, and count six, tampering with evidence; and guilty on counts seven and nine, dereliction of duty.  The jury deadlocked on count nine of the indictment, whereby the trial court declared a mistrial on that count.  The trial court further dismissed count three with prejudice.

3

{¶10} Sentencing hearing went forward September 29, 2017. The trial court merged counts one and seven for sentencing purposes, and merged counts six, eleven with count five for sentencing purposes. Mr. Truckey was sentenced to three years of community control sanctions, and two concurrent 180 day jail terms, each with 90 days suspended.

{¶11} Mr. Truckey timely appealed, assigning six errors. The first reads: "The evidence is insufficient to sustain convictions of tampering with evidence, R.C. 2903.02, tampering with records, R.C. 2913.42(A1)(b)(4) (sic) and dereliction of duty, R.C. 2921.44(E)."

{¶12} In *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (1991), the Supreme Court of Ohio set forth the standard for judging whether the state has introduced sufficient evidence to support a conviction, holding:

{¶13} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, * * * followed.) (Parallel citations omitted.)

{¶14} We find Mr. Truckey's convictions for tampering with evidence, tampering with records, and dereliction of duty are unsupported by sufficient evidence, and must be reversed.

{¶`15} The tampering with evidence and tampering with records charges require

4

evidence of a particular mens rea, which is lacking.

{¶16}  For the tampering with evidence charge, Mr. Truckey must have "[a]lter[ed], destroy[ed], conceal[ed], or remove[d]" evidence "with purpose to impair its value or availability as evidence."  R.C. 2921.12(A)(1).  For tampering with records, Mr. Truckey must have "[f]alsif[ied], destoy[ed], remove[ed], conceal[ed], alter[ed], deface[ed], or mutilate[d] a record with purpose to defraud."  R.C. 2913.42(A)1).  "Defraud" necessarily implies an element of deception.  R.C. 2913.01(B) ("'[de]fraud' means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another").

{¶17}  The only possible conduct by Mr. Truckey that could satisfy the actus element of these statutes was taking a copy of the body cam video to his home.  There is no evidence that he ever tried to conceal the fact he possessed a copy of the video.  No less than four other members of the village police department were aware a video existed and what it contained, and that Mr. Truckey had a copy – which information was made known to them by Mr. Truckey himself.

{¶18}  At best, it could be argued that Mr. Truckey removed the evidence or record. [1]  Conceding this, arguendo, there is no evidence of a purpose to defraud or impair its value or availability as evidence.  Not only was it known that Mr. Truckey possessed a copy, but nothing he did suggests a purpose to impair its value as evidence or defraud. [2]

---

1. Even this is doubtful inasmuch as Mr. Truckey only removed a copy of a video that was stored on the sheriff's server after being downloaded by another officer.  As Chief Wassie testified: "once the camera downloads into the dock, it automatically downloads into our Evidence Computer.  It is officially now evidence with the Village Police Department."
2. On the contrary, Mr. Truckey explained why he took the copy home: "[i]n my mind it wasn't evidence then, and it wasn't evidence now.  I used force.  I wanted to watch this video one, two, thirty more times, if

5

{¶19} Construing the evidence most strongly in the state's favor, it is not possible to conclude reasonably that Mr. Truckey did anything to alter or conceal or prevent access to the copy of the body cam video – or that he ever had such a purpose.

{¶20} For dereliction of duty, Mr. Truckey must have "negligently fail[ed] to perform a lawful duty in a criminal case or proceeding." R.C. 2921.44(B). The state does not identify a "lawful duty" Mr. Truckey failed to perform, but rather contends his conduct violated the law because the state introduced sufficient evidence of both tampering with evidence and tampering with records. Assuming that violating a criminal statute constitutes nonperformance of a lawful duty, the state, for the reasons set forth above, failed in its burden of proving either tampering with evidence or tampering with records. Accordingly, the dereliction of duty conviction is also unsupported.

{¶21} The first assignment of error has merit.

{¶22} The second assignment of error reads: "The trial court erred by allowing the prosecutor to introduce and argue evidence of Truckey's alleged violations of Sheriff Department policy rather than the actual elements of the charged offenses." The state introduced the sheriff department's policy procedures and use of force standards. Mr. Truckey argues this means the state was trying him simply for violating these policies, rather than for felonious assault.

{¶23} Evid.R. 401 provides: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

I had to. It was absolutely critical to the incident. It needed to be reviewed by me. I was the one that used force. I wanted to see it again."

6

Evid.R. 402 provides: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible." Evid.R. 403 provides:

{¶24} "(A) Exclusion Mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

{¶25} "(B) Exclusion Discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

{¶26} The state introduced the sheriff department's policies to inform the jury what they are, and to show that Mr. Truckey was not acting in compliance with them. As the court held in *State v. White*, 6th Dist. Lucas No. L-10-1194, 2013-Ohio-51, a leading case on police use of force, at ¶57:

{¶27} "Given that a police officer is authorized and, indeed, frequently obligated to use force—and sometimes deadly force—the benchmark of the 'objectively reasonable officer' is not just appropriate for criminal prosecutions, but necessary. Unlike the prosaic 'reasonable person or 'reasonable civilian' standard, the standard of the reasonable officer takes into account not only the specialized training and experience of police officers, but also the public-safety role for which they are uniquely employed. In that sense it is a more tailored standard than what suffices for tort law—because in circumstances relevant to the law enforcement function, the reasonable officer can do

7

more than the reasonable civilian. But if federal use-of-force law applies to the prosecution of a police officer for an alleged misuse of force on duty, then *all* of its doctrines, standards and derivative rules apply to the extent their use is supported by the evidence and is consistent with the nature of the crime charged." (Emphasis sic.)

{¶28} We agree with the Sixth District that when judging police use of force, the "specialized training" of the officer is a vital issue. Consequently, the trial court did not abuse its discretion when it allowed the state to introduce the sheriff department's policies on the use of force.

{¶29} The second assignment of error lacks merit.

{¶30} The third assignment of error reads: "The trial court erred by allowing the prosecutor to illicit (sic) improper opinion testimony and testimony to the ultimate issue before the jury." Detective Jeff Brown explained to the jury while the body camera video concealed by Mr. Truckey was considered evidence. Mr. Truckey contends this was inadmissible lay testimony on the ultimate issue before the jury on the various tampering charges.

{¶31} Given our disposition of the first assignment of error, we find the third assignment of error moot.

{¶32} The fourth assignment of error reads: "The trial court erred by precluding a defense expert to testify as to his opinion of the events in the case as the witness was qualified to provide." Prior to trial, the state moved in limine regarding the testimony of Mr. Truckey's use of force expert, Kevin Davis. Mr. Davis was allowed to testify regarding police training, procedure and practice on use of force. He was not allowed to testify

8

whether Mr. Truckey's use of force was reasonable. Mr. Truckey contends this limitation on his expert's testimony to exclude any facts in this case was impermissible.

{¶33} The state counters by pointing to the decision of the United States Court of Appeals, Sixth Circuit, in *Hubbard v. Gross*, 199 Fed.Appx. 433, 442-443 (2006), where the court held:

{¶34} "Dr. Cox sought to opine on what is a reasonable use of force, and that issue is within the competence of a lay jury. The district court reasoned that the proffered testimony was 'unnecessary' and 'would consist of legal conclusions.' Unnecessary expert testimony may be excluded. *See Salem v. United States Lines Co.,* 370 U.S. 31, 35, * * * (1962) (stating, 'expert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them' (internal quotations omitted). Because testimony about whether the officers used reasonable force is a legal conclusion and may confuse the trier of fact, the district court is within its sound discretion to exclude it. *See, e.g., Pena v. Leombruni,* 200 F.3d 1031, 1034 (7th Cir.1999) (holding that a jury is not assisted by expert testimony on what level of force is appropriate under the circumstances). If the jury believed that Hubbard was being violent, the jury did not need expert opinion to determine whether it was reasonable to spray, cuff and restrain Hubbard." (parallel citations omitted.)

{¶35} We agree with the Sixth Circuit. The trial court did not abuse its discretion by limiting Mr. Davis' testimony.

{¶36} The fourth assignment of error lacks merit.

{¶37} The fifth assignment of error reads: "The convictions are null and void as Truckey was protected by immunity for criminal charges." Mr. Truckey argues that he should have received qualified immunity for his assault on Mr. Dirrigl. The state points out that the General Assembly has passed various statutes giving police officers immunity from criminal liability, but none apply to this case.

{¶38} We agree with the state that the issue of under what circumstances a police officer should be given immunity from criminal prosecution is a matter best left to the legislature.

{¶39} The fifth assignment of error lacks merit.

{¶40} The sixth assignment of error reads: "The conviction is against the manifest weight of the evidence in violation of the constitution." Mr. Truckey contends his conviction for assault is against the manifest weight of the evidence.

{¶41} "A manifest weight of the evidence challenge contests the believability of the evidence presented. *State v. Schlee* (Dec. 23, 1994), 11th Dist. No. 93–L–082, 1994 Ohio App. LEXIS 5862, at *13. When determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences drawn from it, consider the witnesses' credibility, and decide whether in resolving the conflicts in the evidence, the trier of fact lost its way and created a manifest miscarriage of justice when it returned a guilty verdict. *State v. Thompkins,* 78 Ohio St.3d 380, 387 [1997] * * *, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1983) * * * Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine. *State v. Thomas*, 70 Ohio St.2d 79 (1982) * * *, at syllabus. The issue when reviewing a manifest weight

10

of the evidence challenge is whether 'there is *substantial* evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.' *State v. Nields,* 93 Ohio St.3d 6, 25 [2001], * * *, quoting *State v. Getsy,* 84 Ohio St.3d 180, 193–194, * * *, (emphasis sic). When reviewing a manifest weight of the evidence challenge, an appellate court sits as the 'thirteenth juror.' *Thompkins,* supra, at 387, * * *. The granting of a new trial is exercised only in exceptional cases where the evidence weighs heavily against a conviction. *Id.*, quoting *Martin, supra*, at 175, * * *." (Emphasis sic.) (Parallel citations omitted.) *State v. Wynder*, 11th Dist. Ashtabula No. 2001-A-0063, 2003-Ohio-5978, ¶23.

{¶42} Mr. Truckey was convicted of assault, pursuant to R.C. 2903.13(A), which provides: "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." The jury did not lose its way in finding him guilty of this. The body camera video alone proves that Mr. Truckey assaulted Mr. Dirrigl, causing him serious injury.

{¶43} This assignment of error lacks merit.

{¶44} The judgment of the Ashtabula County Court of Common Pleas is affirmed in part, and reversed in part, and remanded, for further proceedings consistent with this opinion.


THOMAS R. WRIGHT, P.J., concurs,

DIANE V. GRENDELL, J., concurs with a Concurring Opinion.


_____

11

DIANE V. GRENDELL, J., concurs with a Concurring Opinion.

{¶45} Truckey's convictions for Tampering with Evidence, Tampering with Records, and Dereliction of Duty are properly reversed. These charges require evidence of a particular actus reus and mens rea – both of which are lacking. The following concurring opinion has been adopted verbatim by the majority.

{¶46} For Tampering with Evidence, Truckey must "[a]lter, destroy, conceal, or remove" evidence "with purpose to impair its value or availability as evidence." R.C. 2921.12(A)(1). For Tampering with Records, Truckey must "[f]alsify, destroy, remove, conceal, alter, deface, or mutilate" a record "with purpose to defraud." R.C. 2913.42(A)(1). "Defraud" necessarily implies an element of deception. R.C. 2913.01(B) ("'[d]efraud' means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another").

{¶47} The only possible conduct by Truckey that could satisfy the actus element of these statutes was taking a copy of the body-cam video to his home. There is no evidence that Truckey ever tried to conceal the fact that he possessed a copy of the video. No less than four other members of the Village Police Department were aware that a video existed and what it contained and that Truckey had a copy, and this information was voluntarily made known to them by Truckey himself.

{¶48} At most, it could be argued that Truckey removed the evidence/record.[3] Conceding this, arguendo, there is no evidence of a purpose to defraud or to impair its value or availability as evidence. Not only was it known that Truckey possessed a copy,

---

3. Even this is doubtful inasmuch as Truckey only removed a copy of a video that was stored on the Sheriff's Department server after being downloaded by another officer. As Chief Wassie testified: "once the camera downloads into the dock, it automatically downloads into our Evidence Computer. It is officially now evidence within the Village Police Department."

12

but nothing Truckey did suggests a purpose to impair its value as evidence or to defraud.[4] After removing the copy to his home, Truckey was placed on administrative leave. He was never contacted by the Department to return the copy. When Lieutenant Niemi desired to view the video, he simply had another copy made.

{¶49} Construing what evidence there is most strongly in the State's favor, it is not possible to reasonably conclude that Truckey did anything to alter or conceal or prevent access to the copy of the body-cam video or that he ever had such a purpose.

{¶50} For Dereliction of Duty, Truckey must "negligently fail to perform a lawful duty in a criminal case or proceeding." R.C. 2921.44(B). The State does not actually identify a "lawful duty" that Truckey failed to perform but, rather, contends his conduct violated the law because "the State presented sufficient evidence * * * of both Tampering with Evidence and Tampering with Records." Appellee's brief at 16. Assuming that violating a criminal statute constitutes the nonperformance of a lawful duty, the State has, for the reasons set forth above, failed to prove that Truckey committed either Tampering with Evidence or Tampering with Records. Accordingly, the Dereliction of Duty conviction is similarly unsupported.

{¶51} For the foregoing reasons, I concur in the reversal of Truckey's convictions for Tampering with Evidence, Tampering with Records, and Dereliction of Duty.

---

4. On the contrary, Truckey explained why he took the copy home thus: "In my mind it wasn't evidence then, and it wasn't evidence now. I used force. I wanted to watch this video one, two, thirty more times, if I had to. It was absolutely a critical incident. It needed to be reviewed by me. I was the one that used force. I wanted to see it again."

13