[Cite as *State v. Horsley* , 2011-Ohio-1355.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | |
|---|---|
| STATE OF OHIO, | : |
| | : |
| Plaintiff-Appellee, | : Case No. 10CA3152 |
| | : |
| vs. | : **Released: March 18, 2011** |
| | : |
| MARK A. HORSLEY, | : <u>DECISION AND JUDGMENT</u> |
| | : <u>ENTRY</u> |
| Defendant-Appellant. | : |

_____

Michael L. Benson, Benson & Schmidt, LLP, Chillicothe, Ohio, for
Appellant.

Matthew S. Schmidt[1], Ross County Prosecutor, and Jeffrey C. Marks, Ross
County Assistant Prosecutor, Chillicothe, Ohio, for Appellee.

_____

McFarland, J.:

    **{¶1}** Defendant-Appellant, Mark Horsley, appeals the Ross County

Court of Common Pleas' judgment convicting him of vandalism. Appellant

argues that the trial court should have dismissed the indictment due to the

state's failure to comply with the speedy trial statute. He asserts that the

state had to bring him to trial within 270 days of the date on which he was

arrested for the incident arising out of the vandalism offense, July 11, 2009,

and not on the date of his arrest pursuant to the indictment, November 9,

---

[1] Since the filing of this appeal, Matthew S. Schmidt is now the Ross County Prosecuting Attorney rather than Michael M. Ater.

2009.  Because the state did not learn any new facts following appellant's initial arrest arising out of the vandalism incident, the speedy trial clock began on the date of appellant's arrest, July 11, 2009, and not on the date when the state subsequently arrested appellant on the indictment, November 9, 2009.  Therefore, we agree with appellant that the state failed to bring him to trial on the vandalism charge within the speedy trial time limit.  Accordingly, we sustain his assignment of error and reverse the trial court's judgment.

I.

FACTS

{¶2} On July 11, 2009, appellant rammed his vehicle into an outside wall at the Baymont Inn and Suites hotel.  Chillicothe Police Officer Gannon responded to the scene.  Officer Gannon subsequently arrested appellant for operating a motor vehicle while under the influence and violating a protection order.  He remained in jail until July 20, 2009.

{¶3} Officer Gannon's incident report listed three crimes that appellant committed, one of which was vandalism.  On page 6 of her report, the officer lists certain items of property, one of which is "destroyed/damaged/vandalized" property.  The report values this property at $5,000.  The officer stated that she photographed the property damage and

reported that she would forward a copy of her report to the prosecutor's office in reference to vandalism charges.  On August 12, 2009, the state received a $10,565.93 estimate to repair the damage appellant caused at the hotel.

{¶4} On November 6, 2009, the Ross County Grand Jury returned an indictment that charged appellant with vandalism, a fourth-degree felony, in violation of R.C. 2909.05.  On November 9, 2009, appellant was arrested pursuant to the indictment and was continuously incarcerated until his conviction.

{¶5} On January 15, 2010, appellant filed a motion to dismiss in which he argued that the time within which to bring him to trial under R.C. 2945.71 had expired.  At a hearing, the parties stipulated to admitting Officer Gannon's report and further stipulated to the following facts:  (1) on July 11, 2009, Officer Gannon was not aware of the value of the damage to the property; (2) on August 12, 2009, the state learned that the estimated damage amounted to $10,565.93; (3) appellant was arrested on the vandalism indictment on November 9, 2009, and has been continuously in jail since; and (4) appellant was incarcerated from July 11 to July 21, 2009, as a result of the July 11, 2009 incident.  After the parties presented arguments, the court issued its decision from the bench.  The court

determined that because at the time of appellant's July 11, 2009 arrest, the

state did not know the value of the damage to the property so as to know

which vandalism offense level to charge, the statutory speedy time limit did

not begin until November 6, 2009.

{¶6} Appellant subsequently entered a no contest plea, and the court

sentenced appellant to seven months in prison.

## II.

## ASSIGNMENT OF ERROR

{¶7} Appellant timely appealed the trial court's judgment and raises

one assignment of error:

> THE TRIAL COURT ERRED IN OVERRULING
> DEFENDANT-APPELLANT'S, MARK HORSLEY'S,
> MOTION TO DISMISS ON GROUNDS THAT HIS
> STATUTORY RIGHTS TO A SPEEDY TRIAL WERE
> VIOLATED PURSUANT TO R.C. 2945.71, ET SEQ.

## III.

{¶8} In his sole assignment of error, appellant argues that the trial

court erred by denying his motion to dismiss on speedy trial grounds.  He

asserts that the speedy trial clock began on July 11, 2009, when the facts

constituting the vandalism offense occurred.

{¶9} Our review of a trial court's decision regarding a motion to

dismiss for an alleged speedy trial violation involves mixed questions of law

and fact.  See, e.g., *State v. Alexander,* Scioto App. No. 08CA3221, 2009-Ohio-1401, at ¶15.  We accord due deference to the trial court's findings of fact if they are supported by competent, credible evidence.  *Id.*  However, we independently determine whether the trial court properly applied the law to the facts of the case.  *Id.*

{¶10} "The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial.  R.C. 2945.71 implements this guarantee with specific time limits within which a person must be brought to trial."  *State v. Blackburn,* 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319, at ¶10.  If the state fails to bring a defendant to trial within the time required by R.C. 2945.71 and 2945.72, the trial court must discharge the defendant upon motion made at or prior to the start of trial.  R.C. 2945.73(B).  The Ohio Supreme Court has "imposed upon the prosecution and the trial courts the mandatory duty of complying" with the speedy trial statutes.  *State v. Singer* (1977), 50 Ohio St.2d 103, 105, 362 N.E.2d 1216; see, also, *State v. Parker* 113 Ohio St.3d 207, 2007-Ohio-1534, 863 N.E.2d 1032, at ¶¶14-15.  We must strictly construe the speedy trial statutes against the state.  See *Brecksville v. Cook* (1996), 75 Ohio St.3d 53, 57, 661 N.E.2d 706.

**{¶11}** R.C. 2945.71 requires the state to try a person accused of a felony "within two hundred seventy days after the person's arrest."  R.C. 2945.71(C)(2).  Under R.C. 2945.71(E), each day that a defendant is incarcerated in lieu of bond on the pending charge counts as three days.  An accused presents a prima facie case for discharge by demonstrating that his case was pending for a time exceeding the statutory limits provided in R.C. 2945.71.  See, e.g., *State v. Butcher* (1986), 27 Ohio St.3d 28, 30-31, 500 N.E.2d 1368.  The burden then shifts to the state to show that the time limit was extended under R.C. 2945.72.  Id. at 31.

**{¶12}** In the case at bar, the state indicted appellant for a fourth-degree felony vandalism offense.  Therefore, the state had to try appellant within 270 days of appellant's arrest.  The question we must determine is whether appellant's arrest on the vandalism offense occurred on July 11, 2009, when the incident giving rise to the vandalism offense occurred, or if the arrest occurred on November 9, 2009, when he was arrested pursuant to the indictment.

**{¶13}** A series of cases from the Ohio Supreme Court provides guidance in answering this question.  In *State v. Clay* (1983), 9 Ohio App.3d 216, 218, 459 N.E.2d 609, the trial court dismissed subsequent charges of attempted rape and gross sexual imposition when the defendant had initially

been arrested for unauthorized use of a vehicle, two counts of aggravated robbery, and two counts of abduction. On appeal to the Ohio Supreme Court, the court considered the following question: "When a defendant is arrested and charged with commission of one crime, held in jail pending indictment on additional charges, indictment is completed and service had on the defendant on those additional charges, does the computation of time for speedy trial consideration run from the original arrest date or the date of the return of the indictment containing the additional charges?" Id. at 216. The court determined that because at the time of the defendant's arrest "the state had in its possession all of the pertinent facts which formed the basis for the original charges as well as the additional charges brought by way of indictment," the speedy trial clock began on the date of the defendant's arrest. Id.

{¶14} In *State v. Adams* (1989), 43 Ohio St.3d 67, 538 N.E.2d 1025, the state initially charged the defendant with having a concentration of ten-hundredths of one gram or more by weight of alcohol per two-hundred-ten liters of his breath in violation of R.C. 4511.19(A)(3). The defendant waived the time limitation for trial for a total of thirty-five days, but the state eventually decided to nolle the charge. The state subsequently filed a second complaint against defendant that charged him with operating a motor vehicle

while under the influence of alcohol in violation of R.C. 4511.19(A)(1). In applying the same ninety-day time period to both charges, the court held: "'[W]hen new and additional charges arise from the same facts as did the original charge and the state knew of such facts at the time of the initial indictment, the time within which trial is to begin on the additional charge is subject to the same statutory limitations period that is applied to the original charge.'" Id. at 68, quoting *State v. Clay* (1983), 9 Ohio App.3d 216, 218, 459 N.E.2d 609; see, also, *State v. Parker*, 113 Ohio St.3d 207, 2007-Ohio-1534, 863 N.E.2d 1032 (holding that when multiple charges arise from a criminal incident and share a common litigation history, pretrial incarceration on the multiple charges constitutes incarceration on the "pending charge" for purposes of the R.C. 2945.71(E) speedy trial statute triple count provision).

{¶15} In *State v. Baker* (1997), 78 Ohio St.3d 108, 676 N.E.2d 883, law enforcement officers arrested the defendant, a pharmacist, after the defendant made several illegal sales of drugs to police informants. The officers executed a search warrant and collected a substantial amount of business and financial records, which the state reviewed to determine whether to bring any additional criminal charges. One week after the defendant's arrest, the state charged him with two counts of drug trafficking

and five counts of aggravated drug trafficking. The state continued its investigation into the defendant's records and performed an audit. Nine months after the state completed the audit, the state filed an additional indictment that charged the defendant with eight counts of drug trafficking, one count of aggravated drug trafficking, and one count of Medicaid fraud.

{¶16} The trial court denied the defendant's motion to dismiss on the basis that the second indictment fell outside the speedy trial time limit, but the appellate court reversed. The state then appealed to the Ohio Supreme Court. The Ohio Supreme Court framed the issue as "whether Ohio's Constitution or speedy-trial statute requires additional criminal charges filed in a subsequent indictment to run from the date of defendant's original arrest, with time tolled during the state's audits of seized evidence, or whether the statute allows the state a new time period from the date of the subsequent indictment." Id. at 110. The court held "that in issuing a subsequent indictment, the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment." Id.

{¶17} In applying this rule to the facts in *Baker*, the court held that the second indictment did not violate the defendant's right to a speedy trial. The

court determined that the second indictment was "based on new and additional facts which the state had no knowledge of at the time of the original indictment" and that "[a]dditional crimes based on different facts should not be considered as arising from the same sequence of events for the purposes of speedy-trial computation." Id. at 111. The court explained:

> "The original charges against Baker resulted from an investigation by law enforcement agents using informants to illegally purchase prescription drugs from Baker's pharmacies. These original charges were based on the controlled buys that occurred before Baker's arrest on June 10, 1993, and the search of Baker's two pharmacies. After executing search warrants at Baker's two pharmacies, the state began investigating Baker's pharmaceutical records to determine if additional violations had occurred. As a result of its analysis of the records seized on June 10, 1993, the state filed additional charges of drug trafficking and Medicaid fraud, which the state could not have known of until both audits of Baker's records were completed.
>
> To require the state to bring additional charges within the time period of the original indictment, when the state could not have had any knowledge of the additional charges until investigating later-seized evidence, would undermine the state's ability to prosecute elaborate or complex crimes. * * *
>
> Since the charges in the second indictment stem from additional facts which the state did not know of before the audits, the state should be accorded a new 270-day period beginning from the time when the second indictment was returned on June 1, 1994. When additional criminal charges arise from facts distinct from those supporting an original charge, or the state was unaware of such facts at that time, the state is not required to bring the accused to trial within the same statutory period as the original charge under R.C. 2945.71 et seq."

Id. at 111-112.

{¶18} In the case at bar, the parties do not dispute that the November 6, 2009 vandalism indictment arose from the same set of facts as appellant's July 11, 2009 arrest for DUI and violating a protection order. Rather, the parties dispute whether the state knew of the facts constituting the vandalism offense at the time of appellant's July 11, 2009 arrest. Based upon our review of the Ohio Supreme Court's case law, we believe that the state knew, or should have known, of the facts constituting the vandalism offense at the time of appellant's July 11, 2009 arrest.

{¶19} R.C. 2905.05 sets forth the essential elements constituting the offense of vandalism and states:

> (A) No person shall knowingly cause serious physical harm to an occupied structure or any of its contents.
> (B)(1) No person shall knowingly cause physical harm to property that is owned or possessed by another, when either of the following applies:
> (a) The property is used by its owner or possessor in the owner's or possessor's profession, business, trade, or occupation, and the value of the property or the amount of physical harm involved is five hundred dollars or more;
> (b) Regardless of the value of the property or the amount of damage done, the property or its equivalent is necessary in order for its owner or possessor to engage in the owner's or possessor's profession, business, trade, or occupation.
> * * * *
> (E) Whoever violates this section is guilty of vandalism. Except as otherwise provided in this division, vandalism is a felony of the fifth degree that is punishable by a fine of up to two thousand five hundred dollars in addition to the penalties specified for a felony of the fifth degree in sections 2929.11 to 2929.18 of the Revised Code. If the value of the property or the

amount of physical harm involved is five thousand dollars or more but less than one hundred thousand dollars, vandalism is a felony of the fourth degree.  If the value of the property or the amount of physical harm involved is one hundred thousand dollars or more, vandalism is a felony of the third degree.

{¶20} On the date of appellant's July 11, 2009 arrest, the officer who responded to the scene observed property damage to an outdoor wall at a hotel.  These facts should have at least given the state notice that appellant violated R.C. 2905.05(B)(1)(a)—a fifth-degree felony.  The state further knew or should have known that the value of the property or the amount of physical harm was $5,000 or more due to the officer's statement in her report that the value of the property involved was $5,000.  Thus, the state knew or should have known sufficient facts to charge a fourth-degree felony.  Moreover, appellant significantly damaged an exterior wall at a hotel.  It defies logic to suggest that the value of the hotel was under $5,000.  Thus, the state should have known that the value of the property appellant vandalized was $5,000 or more.  Nothing in the statute requires the state to prove the precise amount of damage caused in order to indict a defendant for vandalism.

{¶21} We further observe that the present case does not involve a complex or elaborate crime or set of circumstances, as in *Baker*.  Instead, the present case involves a simple vandalism charge and is more akin to *Clay*

and *Adams*.  To charge appellant with vandalism, the state was not required

to conduct an extensive investigation into appellant's background, actions,

or records.  The state knew or should have known all of the operative facts

constituting the vandalism offense at the time of appellant's July 11, 2009

arrest.  The officer observed the property damage to the hotel.  On her

report, she valued the property involved at $5,000.  Even if she did not know

the exact amount of the property involved or the exact amount of the

damage, the vandalism statute does not require such knowledge in order to

indict a defendant.  Cf. *State v. Cooney* (1997), 124 Ohio App.3d 570, 573,

706 N.E.2d 854 (observing that in a DUI case, state need not know exact

results of blood test in order to charge R.C. 4511.19(A)(2) offense

(prohibited blood-alcohol content)).  Thus, we disagree with the state's

assertion that in order to correctly charge a fourth-degree felony vandalism

offense, it had to know the exact amount of damage that appellant caused.[2]

---

[2] In regards to the state's concern raised during the motion to dismiss hearing that if it had charged appellant with a misdemeanor vandalism offense and then learned the amount of damage elevated the offense to a fourth-degree felony,  it would have been subject to the ninety-day time limit applicable to misdemeanors, we point out that the vandalism statute's penalty provisions contain no set of circumstances under which vandalism is a misdemeanor.  Moreover, to the extent the state were to initially charge appellant with a fifth-degree vandalism offense and then later learn that it was a fourth-degree vandalism offense, the state could dismiss the first indictment and then re-indict appellant (or, the state could have charged appellant with the higher level offense and if the facts did not support a conviction for the fourth-degree felony offense, he potentially could be convicted of the lesser offense).  The time period between the two indictments would not count towards the speedy trial time, unless appellant were incarcerated.  Thus, the state's only option was not to wait for a precise damage estimate before it could indict appellant for a fourth-degree felony vandalism offense.

{¶22} Accordingly, based upon the foregoing reasons, we sustain appellant's sole assignment of error and reverse the trial court's judgment.

**JUDGMENT REVERSED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE REVERSED and that the Appellant recover of Appellee costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, P.J. and Abele, J.: Concur in Judgment and Opinion.


For the Court,


BY: _____
    Matthew W. McFarland, Judge



**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**