[Cite as *State v. Campbell*, 2021-Ohio-2482.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
VINTON COUNTY

STATE OF OHIO,                       :

    Plaintiff-Appellee,              :   Case No.  20CA723

    vs.                              :

AUSTIN B. CAMPBELL,                  :   DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.             :

_____

APPEARANCES:

Dennis W. McNamara, Columbus, Ohio, for appellant.

Dave Yost, Ohio Attorney General, and Andrea K. Boyd, Assistant
Attorney General, Columbus, Ohio, for appellee.

_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:7-13-21
PER CURIAM.

{¶1}  This is an appeal from a Vinton County Common Pleas
Court judgment of conviction and sentence.  Austin B. Campbell,
defendant below and appellant herein, assigns the following
errors for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT ERRED WHEN IT OVERRULED MR.
> CAMPBELL'S MOTION TO DISMISS THE
> INDICTMENT."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT'S VERDICTS FINDING MR. CAMPBELL GUILTY OF THE OFFENSES OF TAMPERING WITH RECORDS AND FORGERY WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE."

{¶2} Between January 2009 and January 2013, appellant served as the Vinton County Prosecutor. In 2015, the state filed a bill of information that charged appellant with eight counts of falsification based upon conduct that occurred between 2009 and 2012, while appellant served as the Vinton County Prosecutor. On August 27, 2018, the trial court dismissed the case with prejudice due to a violation of appellant's speedy trial rights.

{¶3} On December 26, 2018, a Vinton County Grand Jury returned an indictment that charged appellant with (1) tampering with records, in violation of R.C. 2913.42, and (2) forgery, in violation of R.C. 2913.31(A)(2).

{¶4} Appellant subsequently filed a motion to dismiss the indictment based upon a violation of his speedy trial rights. Appellant noted that the current indictment is based upon his failure to list the prosecutor's office's Furtherance of Justice (FOJ) fund as a creditor on his 2012 financial disclosure form that he filed in 2013, facts that the state knew when it filed the 2015 indictment. Appellant contended that the current

indictment does not set forth any facts that differ from the previous bill of information.  Instead, appellant claimed that the facts alleged in the 2015 bill of information and the current indictment constitute a continuing course of conduct.  Appellant thus argued that the state was required to try him within the time frame of the 2015 bill of information.

{¶5}  The state's memorandum contra asserted that the speedy-trial time frame of the 2015 bill of information should not apply to the current indictment because the current indictment arises from a different set of facts than those alleged in the initial bill of information.  The state contended that the 2015 bill of information and the current indictment are based upon "different events that took place on different dates."  The 2015 bill of information alleged that appellant committed eight counts of falsification between January 1, 2009 and January 1, 2012, but the current indictment charges appellant with different offenses–tampering with records and forgery–that occurred at a different time–May 14, 2013.

{¶6}  On November 13, 2019, the trial court overruled appellant's motion to dismiss the indictment.

Before trial, the parties entered into several stipulations.  They agreed, in part, that appellant made five purchases for personal use with the FOJ debit card that totaled

$1,920.67, and that on January 3, 2013, appellant repaid the amount and listed the expenses on the annual report that he filed with the Vinton County Auditor.

{¶7} On December 16, 2019, the court held a bench trial. At trial, the state asserted that it did not plan to call any witnesses and, instead, intended to rely upon the parties' stipulations and the exhibits it sought to admit into evidence. After the court admitted the state's exhibits, the state rested.

{¶8} At that juncture, appellant filed a Crim.R. 29 motion for judgment of acquittal and asserted that the state did not present any evidence to show that he acted with a purpose to defraud or that appellant falsified any document. The state argued that the failure to list the FOJ fund as a creditor established that the form was false.[1] The state contended that

---

[1] R.C. 102.02(A)(2)(e) requires a financial disclosure statement to include, inter alia:

> The names of all persons residing or transacting business in the state to whom the person filing the statement owes, in the person's own name or in the name of any other person, more than one thousand dollars. Division (A)(2)(e) of this section shall not be construed to require the disclosure of debts owed by the person resulting from the ordinary conduct of a business or profession or debts on the person's residence or real property used primarily for personal recreation, except that the superintendent of financial

the circumstances indicate that appellant had the intent to defraud because the failure to list the FOJ fund as a creditor permitted appellant to obtain an interest-free loan and he could avoid an ethics or criminal investigation.

{¶9} The trial court took the matter under advisement and allowed the parties to submit post-trial briefs. In its post-trial brief, the state asserted:

> By failing to disclose the FOJ Fund as a creditor on his [financial disclosure] form, [appellant] was deceiving the Ohio Ethics Commission, and anyone else who viewed the [financial disclosure form]. He did so to conceal the fact that he was using the FOJ Fund for personal use throughout calendar year 2012.

The state argued that appellant knew that his disclosure of personal use of the FOJ fund "might lead to questions about how he was using the FOJ Fund."

{¶10} In his post-trial brief, appellant asserted that the state failed to present any evidence to show that he acted with purpose to defraud or an intent to deceive. Appellant alleged that he disclosed his personal use of the fund when, on January 3, 2013, he filed a written report with the Vinton County

---

institutions and any deputy superintendent of banks shall disclose the names of all state-chartered banks and all bank subsidiary corporations subject to regulation under section 1109.44 of the Revised Code to whom the superintendent or deputy superintendent owes any money.

Auditor that listed all expenditures made from the FOJ fund during 2012. Appellant argued that this disclosure negates a finding that he had a purpose to defraud or that he had an intent to deceive.

{¶11} On June 10, 2020, the trial court found appellant guilty of both offenses. The court determined that appellant

> knowingly obtained a benefit for himself by borrowing government money from the Furtherance of Justice Fund when he was prohibited from doing so and not paying any interest on the loan. Defendant knowingly obtained this money by deception by purposely not disclosing that he had taken the money on his 2012 Financial Disclosure Statement, a required governmental writing or record, prior to filing it.

The court additionally determined that the state established that appellant had a purpose to defraud. The court explained that the evidence showed that appellant did not list "his appropriation of the FOJ funds on the Financial Disclosure Statement despite the warnings on the Statement." The court further disagreed with appellant that his repayment of the amounts improperly spent negates any purpose to defraud. Thus, the court thus found appellant guilty of tampering with records and forgery.

{¶12} At sentencing, the trial court merged the two offenses. The state elected to proceed to sentencing on the tampering-with-records offense. The court placed appellant on

community control for two years and ordered him to pay a $2,000 fine.  This appeal followed.

I

{¶13} In his first assignment of error, appellant asserts that the trial court erred when it overruled his motion to dismiss the indictment.  Appellant contends that (1) the trial court incorrectly determined that the 2015 bill-of-information speedy-trial deadline did not apply to the subsequent indictment, and (2) the speedy-trial statutes required the state to bring all possible charges that the state had knowledge about at the time that it filed the 2015 indictment.  Appellant additionally argues that the speedy-trial statutes required the state to include the current charges in the 2015 bill of information, because the current charges arise out of the same acts or transaction alleged in the 2015 bill of information. Appellant states that even though the charges alleged in the current indictment occurred at a different time from the charges set forth in the 2015 bill of information, the present charges are "factually related to the charges in the prior case."

{¶14} Appellee counters that even if it knew of the 2012 financial disclosure statement when it filed the 2015 indictment, the second indictment is subject to a new speedy-

trial time frame because it contains additional crimes based on different facts.

{¶15} "Review of a speedy-trial claim involves a mixed question of law and fact. Therefore, we defer to the trial court's factual findings if they are supported by competent, credible evidence, but we review the application of the law to those facts de novo." *State v. Long*, — Ohio St.3d —, 2020-Ohio-5363, — N.E.3d —, ¶ 15; *accord State v. Howerton*, 4th Dist. Lawrence No. 20CA2, 2021-Ohio-913, 2021 WL 1101839, ¶ 11; *State v. Spencer*, 2017-Ohio-456, 84 N.E.3d 106, ¶ 16 (4th Dist.); *State v. Brooks*, 2018-Ohio-2210, 114 N.E.3d 220, ¶ 21 (4th Dist.).

{¶16} The United States and the Ohio Constitutions guarantee an accused the right to a speedy trial. The Sixth Amendment to the United States Constitution states that an "accused shall enjoy the right to a speedy and public trial." Section 10, Article I of the Ohio Constitution guarantees to the party accused in any court "a speedy public trial by an impartial jury."

> The availability of a speedy trial to a person accused of a crime is a fundamental right made obligatory on the states by the Fourteenth Amendment. *See Klopfer v. North Carolina* (1967), 386 U.S. 213, 222-223, 87 S.Ct. 988, 993-994, 18 L.Ed.2d 1; *State v. Singer* (1977), 50 Ohio St.2d 103, 106, 4 O.O.3d 237, 238, 362 N.E.2d 1216, 1218, at fn. 2. The speedy-

trial provision is "'an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself.' *United States v. Ewell*, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627, (1966) * * *." *United States v. Marion* (1971), 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468.

*State v. Adams*, 43 Ohio St.3d 67, 68, 538 N.E.2d 1025 (1989).

**{¶17}** Ohio's speedy trial provisions, R.C. 2945.71 to 2945.73, "constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor." *State v. Pachay*, 64 Ohio St.2d 218, 416 N.E.2d 589 (1980), syllabus; *accord State v. Martin*, 156 Ohio St.3d 503, 2019-Ohio-2010, 129 N.E.3d 437, ¶ 15; *State v. Parker*, 113 Ohio St.3d 207, 2007-Ohio-1534, 863 N.E.2d 1032, ¶ 11; *Brecksville v. Cook*, 75 Ohio St.3d 53, 55, 661 N.E.2d 706 (1996).  To that end, R.C. 2945.71 designates specific time requirements for the state to try an accused.  *State v. Hughes*, 86 Ohio St.3d 424, 425, 715 N.E.2d 540 (1999).

**{¶18}** R.C. 2945.71(C)(2) requires a person accused of a felony to be brought to trial within 270 days of the individual's arrest.  Additionally, R.C. 2945.71(D) states:

A person against whom one or more charges of different degrees, whether felonies, misdemeanors, or combinations of felonies and misdemeanors, all of

which arose out of the same act or transaction, are
pending shall be brought to trial on all of the
charges within the time period required for the
highest degree of offense charged, as determined under
divisions (A), (B), and (C) of this section.

**{¶19}** Courts must "strictly construe the speedy trial statutes against the state," *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996), and must "strictly enforce the legislative mandates evident in these statutes." *Pachay*, 64 Ohio St.2d at 221; *e.g., State v. Parker*, 113 Ohio St.3d 207, 2007-Ohio-1534, 863 N.E.2d 1032, ¶ 15. Consequently, "[t]he prosecution and the trial courts have a mandatory duty to try an accused within the time frame provided by the statute." *State v. Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, 971 N.E.2d 937, ¶ 14. If an accused is not brought to trial within the time limits set forth in the speedy trial statutes, and if an exception does not apply, R.C. 2945.73(B) requires the court, upon motion at or before trial, to discharge the accused.

**{¶20}** In the case sub judice, appellant does not claim that the state failed to bring him to trial within 270 days after his arrest or indictment for the current charges. Instead, appellant asserts that the current charges arise out of the same set of facts as the 2015 indictment. Appellant therefore contends that the speedy-trial provisions required the state to

bring him to trial within the time frame that applied to his 2015 indictment, which expired long ago.

{¶21} When the state files an initial indictment against an accused and then files a subsequent indictment, the subsequent indictment is not subject to the speedy-trial deadline of the initial indictment if either of the following apply: (1) the subsequent indictment charges additional offenses that "arise from facts distinct from those supporting an original charge"; or (2) "the state was unaware of such facts" at the time it filed the initial indictment. *State v. Baker*, 78 Ohio St.3d 108, 112, 676 N.E.2d 883 (1997); *see also Parker* at ¶ 20 (stating that "speedy-trial time is not tolled for the filing of later charges that arose from the facts of the criminal incident that led to the first charge"). Accordingly, "the speedy-trial clock resets when the state brings new charges based on either (1) facts different from those supporting the original charges or (2) lack of knowledge, at the time the original indictment is filed, of the facts supporting the new charges." *State v. Parker*, 6th Dist. Lucas No. L-18-1238, 2020-Ohio-4607, 2020 WL 5743300, ¶ 69.

{¶22} Courts that determine whether "offenses in multiple indictments are truly different" generally review whether the offenses "arise from different circumstances, require different

evidence, and are otherwise distinguishable in a significant way." *State v. Jones*, 2nd Dist. Montgomery No. 21974, 2008-Ohio-1603, 2008 WL 867732, ¶ 10. "The 'key question' to ask * * * is 'whether all of the offenses at issue arose out of the same set of facts." *Parker*, 2020-Ohio-4607, at ¶ 77, quoting *State v. Mohamed*, 10th Dist. Franklin No. 08AP-960, 2009-Ohio-6658, ¶ 32. "If they did not, the state is able to take advantage of a new speedy-trial timetable regardless of when it learned of the facts it needed to indict the defendant on the new charges." *Id.*

**{¶23}** The Ohio Supreme Court's decisions in *Adams* and *Baker* help to illustrate the foregoing rules. In *Adams,* the court determined that the subsequent indictment arose out of the same set of facts as the initial indictment. In that case, the state first charged the defendant with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(3). The defendant waived the speedy-trial time for a total of 35 days. The state later asked the court to enter a *nolle prosequi*, and the trial court dismissed the charge. A day after the court dismissed the charge, the state filed a second complaint against defendant that charged him with operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1). The defendant filed a motion to dismiss

and alleged that the state had failed to bring him to trial within the prescribed time period.  The trial court overruled the defendant's motion.

**{¶24}** On appeal to the Ohio Supreme Court, the defendant argued that the state failed to bring him to trial within the 90-day period applicable to misdemeanors.  The defendant alleged that the waiver that he entered in the first case did not apply to the second case so as to extend the time within which to bring him to trial.

**{¶25}** The supreme court first determined that the speedy-trial time that applied to the first charge also applied to the second charge, because the second charge "stemmed from the original set of facts which gave rise to the [initial] charge." *Id.* at 68.  The court explained:

> "[W]hen new and additional charges arise from the same facts as did the original charge and the state knew of such facts at the time of the initial indictment, the time within which trial is to begin on the additional charge is subject to the same statutory limitations period that is applied to the original charge."

*Id.* at 68, quoting *State v. Clay*, 9 Ohio App.3d 216, 218, 459 N.E.2d 609 (1983).

**{¶26}** The court next concluded that the defendant's waiver in the first case did not apply to the second case.  The court stated: "when an accused waives the right to a speedy trial as

to an initial charge, this waiver is not applicable to additional charges arising from the same set of circumstances that are brought subsequent to the execution of the waiver." *Id.* at 70. The court thus determined that the trial court should have granted the defendant's motion to dismiss.

{¶27} In *Baker*, the Ohio Supreme Court concluded that a subsequent indictment was not subject to the same speedy-trial deadline as the original indictment when, at the time that it filed the first indictment, the state was unaware of the facts alleged in the subsequent indictment. In *Baker*, law enforcement officers arrested the defendant, a pharmacist, after the defendant made several illegal sales of drugs to police informants. The officers also executed search warrants for the defendant's pharmacies. During the search, the officers obtained numerous business and financial records. The state subsequently reviewed the records to determine whether any additional criminal offenses had occurred.

{¶28} One week after the defendant's arrest, the state charged the defendant with two counts of drug trafficking and five counts of aggravated drug trafficking. These charges related to the controlled buys that had occurred before the defendant's arrest and the search of his pharmacies.

{¶29} After the defendant's indictment, the state audited the defendant's business and financial records. Nine months after the state completed the audit, the state filed an additional indictment that charged the defendant with eight counts of drug trafficking, one count of aggravated drug trafficking, and one count of Medicaid fraud.

{¶30} The defendant filed a motion to dismiss the second indictment on speedy-trial grounds and argued that the speedy-trial statutes required the state to bring him to trial for the subsequent charges within the 270-day period that applied to the charges contained in the first indictment. The trial court overruled the defendant's motion to dismiss.

{¶31} On appeal, the appellate court reversed and determined that the speedy-trial clock for the second indictment had begun on the date of the defendant's arrest for the first indictment. The state then appealed to the Ohio Supreme Court. The supreme court considered "whether Ohio's Constitution or speedy-trial statute requires additional criminal charges filed in a subsequent indictment to run from the date of defendant's original arrest, with time tolled during the state's audits of seized evidence, or whether the statute allows the state a new time period from the date of the subsequent indictment." *Id.* at 110. The court acknowledged its *Adams* holding that "subsequent

charges made against an accused would be subject to the same speedy-trial constraints as the original charges, if additional charges arose from the same facts as the first indictment." *Id.* The court did not, however, find that *Adams* applied when "the subsequent charges [are] based on new and additional facts which the state had no knowledge of at the time of the original indictment." *Id.* The court explained:

> "[I]n issuing a second indictment against the defendant, the state was not subject to the speedy-trial time limits of the original indictment, since the subsequent charges were based on new and additional facts which the state had no knowledge of at the time of the original indictment. Additional crimes based on different facts should not be considered as arising from the same sequence of events for the purposes of speedy-trial computation. *See, e.g., State v. Singleton* (C.P.1987), 38 Ohio Misc.2d 13, 526 N.E.2d 121.

*Id.* at 111.

**{¶32}** The court observed that the original indictment was based upon facts learned during controlled buys that occurred before the defendant's arrest and before the search of his pharmacies, and that the second indictment was based upon evidence discovered after the search of the defendant's pharmacies. The court determined that requiring "the state to bring additional charges within the time period of the original indictment, when the state could not have had any knowledge of the additional charges until investigating later-seized

evidence, would undermine the state's ability to prosecute elaborate or complex crimes." *Id.* The court concluded that because "the charges in the second indictment stem from additional facts which the state did not know of before the audits, the state should be accorded a new 270-day period beginning from the time when the second indictment was returned." *Id.* at 111-112. The court ultimately held:

> When additional criminal charges arise from facts distinct from those supporting an original charge, or the state was unaware of such facts at that time, the state is not required to bring the accused to trial within the same statutory period as the original charge under R.C. 2945.71 et seq.

*Id.* at 112.

{¶33} In the case at bar, the state did not allege that it was unaware of the facts when it filed the initial indictment. Instead, the state argues that the second indictment involves criminal charges that arise from facts that are distinct from those that supported the charges contained in the first indictment.

{¶34} Appellant, on the other hand, argues that the charges set forth in the second indictment are not factually distinct from the charges contained in the first indictment. Appellant contends that both indictments arose from the same investigation and involve a similar course of conduct that occurred over a

five-year period.  Appellant thus asserts that the speedy-trial deadline that applied to the first indictment also applies to the second indictment.

**{¶35}** The weight of Ohio authority appears to disagree with appellant's proposition that all criminal charges discovered during an ongoing investigation must be brought at the same time, or the state risks having the later charges dismissed on speedy-trial grounds.  For example, in *State v. Skorvanek*, 9th Dist. No. 05CA008743, 2006-Ohio-69, 2006 WL 52256, the court rejected the defendant's argument that when the state obtains initial and subsequent indictments as result of a single investigation, the speedy-trial clock begins to run on the date applicable to the first indictment.  In *Skorvanek*, the grand jury returned two indictments, almost one year apart, that charged the defendant with various drug offenses that occurred on different dates in March and April 2004.  The defendant asserted that the state knew all of the facts that gave rise to both indictments before it filed the first indictment and had gathered all of the facts during a single investigation.  The defendant thus alleged that the speedy-trial time that applied to the first indictment also applied to the second indictment. The state, on the other hand, argued that the same speedy-trial

time did not apply because the two indictments involved different facts, different offenses, and different animus.

**{¶36}** The *Skorvanek* appellate court agreed with the state and explained that, even though "both indictments stem from the same investigation, the offenses [the defendant] is charged with are the direct result of different events on different dates." *Id.* at ¶ 14. The court noted that one drug offense arose from a March 10, 2004 controlled drug buy and that another offense arose from a March 13, 2004 attempted drug buy. Additional counts arose from conduct that occurred on other dates. The court stated that "while the investigation of [the defendant] may have been ongoing, the offenses with which he is charged were separate and distinct from one another." *Id.* at ¶ 15. The court thus agreed with the state that the defendant "was charged with different offenses, on different dates stemming from different events." *Id.* at ¶ 16. The court therefore determined that the second indictment was not subject to the same speedy-trial deadline as the first indictment.

**{¶37}** The Eleventh District Court of Appeals rejected an argument that multiple indictments based upon an ongoing investigation are subject to the same speedy-trial deadline when the state knew about the facts that gave rise to the criminal charges at the time it filed the first indictment. *State v.*

*Smith*, 11th Dist. Ashtabula No. 2004-A-0089, 2006-Ohio-5187,
2006 WL 2797617.  In *Smith*, the state first charged the
defendant based upon evidence that task force officers
discovered during a search of the defendant's residence.  About
six months later, the state charged the defendant for additional
drug-related offenses that occurred during controlled drug buys
on various dates between September and November 2002.  The
defendant filed a motion to dismiss the second indictment on
speedy-trial grounds, but the trial court overruled it.  On
appeal, the appellate court did not agree with the defendant
that the second indictment was subject to the same speedy-trial
deadline as the first indictment, but instead determined that
the facts set forth in the indictments were separate and
distinct.  Moreover, the court noted that "[e]ven though all the
charges in question were a function of an 'ongoing
investigation,' the multiple prosecutions did not arise from the
'same facts' or 'same set of circumstances.'"  *Id.* at ¶ 27.  The
court thus concluded that the second indictment did not violate
the defendant's right to a speedy trial.

{¶38} In the case sub judice, we conclude that the second
indictment, even though it arises from facts discovered during
the same investigation, is based upon facts separate and
distinct from the facts alleged in the first indictment.  The

first indictment charged appellant with eight counts of falsification, and alleged that the conduct occurred between January 1, 2009 and January 1, 2012. The second indictment charged appellant with different offenses–tampering with records and forgery–and alleged that the conduct occurred on a different date–May 14, 2013. Moreover, the second indictment is based upon a 2012 financial disclosure statement that had not been included in the original charges. The subsequent and original indictments, although arising from the same investigation, involved "different offenses, on different dates stemming from different events." *Skorvanek* at ¶ 16. We, therefore, agree with the trial court's conclusion that the speedy-trial time that applied to the first indictment does not apply to the second indictment. *See Parker*, 113 Ohio St.3d 207, at ¶ 19 (noting that "*Baker* involved subsequent indictments, all of which were the result of the same investigation, but the charges were the direct result of different events on different dates"); *Parker*, 2020-Ohio-4607, at ¶ 77 (concluding that subsequent indictment not subject to speedy-trial time of initial indictment when the offenses occurred on different dates and involved separate sets of facts); *State v. Graham*, 10th Dist. Franklin No. 18AP-636, 2019-Ohio-2020, 2019 WL 2237030, ¶ 30 (determining that speedy-trial time of first indictment did not

apply to second indictment when charges involved break-ins at different locations on different dates); *State v. Hyde*, 2nd Dist. Clark No. 2013CA41, 2014-Ohio-1278, 2014 WL 1338790, ¶ 18 (concluding that speedy-trial time of first indictment did not apply to second indictment when charges involved robberies that occurred "at separate locations on different dates"); *but see State v. Jones*, 2nd Dist. Montgomery No. 21974, 2008-Ohio-1603, 2008 WL 867732, ¶ 10 (declining to read *Baker* to mean that when "the State knew additional facts and circumstances warranting additional charges when the initial indictment was filed, it may nonetheless hold back on those charges simply because the offenses occurred on different dates, and then pursue multiple prosecutions, with the speedy trial time to run anew each time").[2]

{¶39} Moreover, we do not agree with appellant that the case at bar is similar to the facts in *State v. Horsley*, 4th Dist. Ross No. 10CA3152, 2011-Ohio-1355, 2011 WL 1025113. In *Horsley*,

---

[2] We observe that *Jones* appears to be distinguishable from the case at bar. In *Jones*, the state first charged the defendant for one count of rape involving a 13-year-old child. Several months later, the state charged the defendant with four additional counts of rape that involved the same child. The appellate court noted that, even though the rape offenses allegedly occurred on different dates, the record did not clearly indicate whether "'the facts and evidence underlying the first charge and the second indictment differed in any material

this court considered whether a subsequent indictment was subject to the same speedy-trial time as an earlier indictment. In *Horsley*, the defendant crashed his vehicle into an outside wall at a hotel. Law enforcement arrested the defendant for operating a motor vehicle while under the influence (OMVI) and the violation of a protective order. He remained jailed for about nine days.

**{¶40}** Approximately four months after the defendant's arrest, the state filed an indictment that charged appellant with vandalism for the property damage caused when he crashed his vehicle into the hotel. The defendant filed a motion to dismiss the charges on speedy-trial grounds and asserted that the speedy-trial clock for the vandalism charge started at the time of his arrest for OMVI and violating a protective order. The trial court overruled the defendant's motion.

**{¶41}** This court reversed the trial court's decision that overruled the defendant's motion to dismiss the indictment and noted that the vandalism indictment arose from the same set of facts as the defendant's earlier arrest for OMVI and violating a protection order. We also determined "that the state knew, or should have known, of the facts constituting the vandalism

---

way.'" *Id.* at ¶ 14, quoting *State v. Jones*, 2nd Dist. Montgomery No. 20862, 2006-Ohio-2630, ¶ 30.

offense at the time of appellant's [earlier] arrest." *Id.* at ¶ 18. We recognized that unlike the situation in *Baker*, the state was not required to extensively investigate so as to uncover "the operative facts constituting the vandalism offense." *Id.* at ¶ 21. Instead, we noted that at the time of the defendant's arrest, the law enforcement officer observed the property damage to the hotel and had valued the property involved at $5,000. We thus rejected the state's argument that, in order to correctly charge the vandalism offense, the state had to know the precise amount of damage that the defendant caused. We explained that even if the officer "did not know the exact amount of the property involved or the exact amount of the damage, the vandalism statute does not require such knowledge in order to indict a defendant." *Id.*

{¶42} In the case sub judice, we believe that appellant's second indictment does not arise out of the same set of facts that are alleged in the first indictment. Unlike *Horsley* when the second indictment was based upon the series of events that occurred on the same date as the offenses first charged, the second indictment in the case sub judice is based upon different offenses that occurred on different dates more than one year apart. We therefore do not find *Horsley* controlling.

{¶43} Consequently, because we do not agree with appellant that the second indictment is subject to the same speedy-trial deadline as the first indictment, we overrule appellant's first assignment of error.

II

{¶44} In his second assignment of error, appellant asserts that the record does not contain sufficient evidence to support his convictions for tampering with records and forgery.  In particular, appellant contends that the state failed to present sufficient evidence to show that he falsified the financial disclosure statement "with purpose to defraud or knowing that the person is facilitating a fraud."  Appellant argues that evidence that he repaid the funds four months before he filed the financial disclosure statement and, that when he repaid the funds he listed the amounts on a form filed with the Vinton County Auditor, negates the state's allegation that appellant acted with a purpose to defraud or knew that he was facilitating a fraud when he filed the financial disclosure statement.

{¶45} The state argues that, when appellant submitted his financial disclosure statement, he had a "specific intention to deceive the Ohio Ethics Commission by falsely representing his creditors."  The state thus asserts that appellant knew that disclosing the information might lead to an investigation into

his use of the FOJ fund and might "have exposed him to criminal sanction, civil liability, a grievance with Disciplinary Counsel, or simply the embarrassment of his financial situation being made public."  The state further contends that appellant received a benefit by using the funds-he was able to pay for services that he otherwise was unable to afford, and that he obtained an interest-free loan while the amounts remained unpaid.

**{¶46}** Initially, we observe that, although the trial court found appellant guilty of tampering with records and forgery, the trial court merged the forgery offense with the tampering with records offense.  Thus, if sufficient evidence supports appellant's tampering with records conviction, an erroneous verdict on the merged count would be harmless.  *State v. Powell*, 49 Ohio St.3d 255, 263, 552 N.E.2d 191 (1990) ("Since the trial court merged the kidnapping convictions with one another, [the defendant] received only one sentence for kidnapping and an erroneous verdict on Count Three would be harmless beyond a reasonable doubt."); *State v. Wolff*, 7th Dist. Mahoning No. 07MA166, 2009-Ohio-2897, ¶ 70 ("When a trial court dispatched with a count through merger, any error in the jury's verdict on the merged count is rendered harmless beyond a reasonable doubt."); *see State v. Williams*, 4th Dist. Scioto No. 11CA3408,

2012-Ohio-4693, ¶ 54 (concluding that because a trial court does not impose a sentence for merged offenses, a defendant is not "convicted" of merged offenses and thus there is no "conviction" on merged offenses for appellate court to vacate). Consequently, if we determine that sufficient evidence supports appellant's tampering with records conviction, we need not address appellant's sufficiency of the evidence argument regarding the merged offense. Therefore, we first address appellant's arguments regarding the tampering with records conviction.

{¶47} A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.* "Therefore, our review is de novo." *State v. Groce*, – Ohio St.3d —, 2020-Ohio-6671, — N.E.3d —, ¶ 7, citing *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203, ¶ 3.

{¶48} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt.

*Thompkins*, syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring).

{¶49} Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

**{¶50}** In the case at bar, R.C. 2913.42(A)(1) sets forth the essential elements of a tampering-with-records offense:

> No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall * * *
> (1) Falsify, destroy, remove, conceal, alter,

deface, or mutilate any writing, computer software,

data, or record.

**{¶51}** R.C. 2913.01(B) defines "defraud" as "to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." "'Deception' means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another." R.C. 2913.01(A).

**{¶52}** R.C. 2901.22(A) and (B) define when a person acts purposely and when a person acts knowingly:

> (A) A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.
> (B) A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will

probably be of a certain nature. A person has knowledge of circumstances when a person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

**{¶53}** We observe that "'[t]he intent of an accused person dwells in his mind'" and that intent "'can never be proved by the direct testimony of a third person." *State v. Johnson*, 56 Ohio St.2d 35, 38, 381 N.E.2d 637 (1978), quoting *State v. Huffman*, 131 Ohio St. 27, 1 N.E.2d 313 (1936), paragraph four of the syllabus. Instead, intent "'must be gathered from the surrounding facts and circumstances under proper instructions from the court.'" *Id.*, quoting *Huffman*, paragraph four of the syllabus; *e.g., State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 143*; State v. Garner*, 74 Ohio St.3d 49, 60, 656 N.E.2d 623, 634, 1995 WL 664323 (1995). We further observe that "[i]ntention is a question of fact, and not one of law." *Koenig v. State*, 121 Ohio St. 147, 151, 167 N.E. 385 (1929); *State v. Wamsley*, 6th Dist. Butler No. CA2002-05-109, 2003-Ohio-1872, ¶ 18.

**{¶54}** In the case sub judice, appellant relies upon three cases to support his argument that the state did not present sufficient evidence to establish that he acted with purpose to

defraud or knew that he was facilitating a fraud. *State v. Truckey*, 2019-Ohio-407, 130 N.E.3d 990 (11th Dist.); *State v. Agee*, 2017-Ohio-8164, 98 N.E.3d 1272 (8th Dist.); *State v. Baumgarden*, 49 Ohio App.3d 24, 25, 550 N.E.2d 206, 207, 1988 WL 170567 (12th Dist.1988). Appellant contends that all three cases show that when a defendant does not take steps to hide the facts underlying the basis of the criminal charge, the evidence is insufficient to establish an intent to defraud.

**{¶55}** In *Baumgarden*, the court concluded that the evidence failed to show that the defendant committed theft by deception. In *Baumgarden*, the defendant served as the general manager for his employer, Cedar City Motors, Inc. During his employment, he wrote 35 checks to himself that were recorded on the company's books. The state later charged the defendant with theft by deception.

**{¶56}** After a bench trial, the court found the defendant guilty. On appeal, the defendant asserted, in part, that the state failed to present sufficient evidence to establish that he had committed theft by deception. The defendant argued that because the checks were on the company's books and open to inspection at any time, he could not have intended to deceive anyone.

VINTON, 20CA723

**{¶57}** The appellate court agreed with the defendant and explained:

> the amount appellant allegedly stole was clearly carried on the company balance sheet either as a prepaid expense or as an account receivable throughout the period in which the deception allegedly occurred. These checks as well as the company's books and records created an accounting and auditing trail anyone might follow. Melissa Knoop, Cedar City's owner, and the state contend appellant stole the money the thirty-five checks represent because Knoop trusted appellant to run Cedar City and did not discover the checks until appellant was no longer with the company. However, the fact that the checks and company records showing appellant received the money were always available to anyone who wished to examine them, including Knoop, convinces us no reasonable trier of fact could conclude beyond a reasonable doubt that Knoop was deceived by appellant because his check writing was evident in Cedar City's records. Knoop's testimony that she trusted appellant and did not closely oversee his management of Cedar City does not prove appellant deceived her but merely shows that she was unaware of and did not approve his actions.

*Id.* at 25. The court thus reversed the trial court's judgment of conviction for theft by deception.

**{¶58}** In *Agee*, the court determined that the state failed to present sufficient evidence to support the defendant's tampering with records conviction. The state charged the defendant with tampering with records based upon her alleged failure to properly report her income when filing reports with the Ohio Department of Jobs and Family Services in order to receive food stamps. At trial, the state relied upon a single witness, Fred

Sims, who reviewed the case file that the original investigator transferred to him. Sims stated that he did not have any interactions with the defendant and that he did not "conduct any components of [the] investigation." *Id.* at ¶ 8. Instead, Sims explained that he relied upon the case file transferred to him.

{¶59} The defendant testified and stated that she had reported her income to the caseworkers and that at least two redetermination forms were missing from evidence.

{¶60} After the trial court found the defendant guilty of tampering with records, the defendant appealed. On appeal, the defendant asserted that the state failed to present sufficient evidence to support her tampering with records conviction. The appellate court agreed and explained:

> The highly speculative nature of [the state]'s evidence also fails to demonstrate that [the defendant]'s act of executing the reports was "knowing * * * and with a purpose to defraud." [The defendant] testified that she truthfully provided information and that she did not know how the case worker arrived at the figure inserted in the interim report submitted for [the defendant]'s signature.
> Sims could only offer that the tax information was averaged to determine a monthly income, and that it appeared the investigator did not seek any other information from [the defendant] to allow her to address the issue. Even where faced with information contained in the state's interim report exhibit indicating the submission of at least one prior report containing knowledge of a change in income, the absence for which could not be explained, the state argues that [the defendant] was required to explain the absence. The burden of proof is the state's

responsibility. As stated previously, Sims was never [the defendant]'s case worker. In fact, Sims was never a case worker. Sims never personally investigated [the defendant]'s case, talked with [the defendant], or met [the defendant]. Sims merely received [the defendant]'s file, and his testimony regarding [the defendant]'s knowledge was purely speculative.

Illustrative here as to the sufficiency of the evidence and [the state]'s failure to meet its burden of proof, is the statement by Sims regarding the various workers whose names appeared on the case documents. "[U]sually, as a rule, we usually subpoena those people, bring them in." (Tr. 81.) The failure to follow that protocol underlies our decision here that, when viewed in a light favorable to the prosecution, the evidence in this case was insufficient to convict [the defendant] of the charges. The state failed to meet its burden of proof as to the mens rea element of the charges.

*Id.* at ¶¶ 62-64. The court thus reversed the trial court's judgment convicting the defendant of tampering with records.

{¶61} In *Truckey*, the defendant, a former sergeant with the Ashtabula County Sheriff's Department, appealed his conviction for tampering with records based upon his failure to return a body camera video after taking it home. On appeal, the court noted that the tampering with records statute required the state to prove, beyond a reasonable doubt, that the defendant falsified, destroyed, removed, concealed, altered, defaced, or mutilated a record with purpose to defraud. *Id.* at ¶ 16. The court determined that "[t]he only possible conduct by [the defendant] that could satisfy the actus element of th[i]s

statute[] was taking a copy of the body cam video to his home." *Id.* at ¶ 17. The court noted that the state did not present any evidence to show that the defendant attempted "to conceal the fact he possessed a copy of the video." *Id.* The court stated that "[n]o less than four other members of the village police department were aware a video existed and what it contained, and that [the defendant] had a copy-which information was made known to them by [the defendant] himself." *Id.* The court thus concluded that the state failed to present sufficient evidence that the defendant had falsified, destroyed, concealed, altered, defaced, or mutilated a record. The court did observe, however, that the defendant arguably "removed" the body camera video, but nevertheless found that, even if the defendant's conduct satisfied the actus reus element of the statute, the facts and circumstances did not show that he had acted with the intent necessary to commit tampering with records. The court observed that "[n]ot only was it known that [the defendant] possessed a copy [of the video], but nothing he did suggests a purpose to impair its value as evidence or defraud." *Id.* Thus, the court concluded that the evidence failed to show that the defendant "did anything to alter or conceal or prevent access to the copy of the body cam video-or that he ever had such a purpose." *Id.* at ¶ 19.

**{¶62}** Appellant asserts that, just like the defendants in *Baumgarden*, *Agee*, and *Truckey*, he also did not attempt to hide his use of the FOJ funds for personal reasons. Appellant points out that he disclosed his use of FOJ funds on January 3, 2013, when he submitted his annual report to the Vinton County Auditor. However, we do not agree that appellant's conduct in the case sub judice is similar to the defendants' conduct in *Baumgarden*, *Agee*, and *Truckey*.

**{¶63}** First, in *Truckey*, the state did not allege, and none of the evidence indicated, that the defendant falsified a record. Instead, the allegation involved the defendant concealing or removing a record. The court noted that all interested parties knew that the defendant had the record, a body camera video, in his possession.

**{¶64}** In the case at bar, by contrast, the state alleged that appellant falsified a record (his 2012 financial disclosure statement) by failing to list the FOJ fund as a creditor. The state did not allege that appellant concealed or removed a record, but, instead alleged that appellant falsified his 2012 financial disclosure form by failing to disclose that he owed the FOJ fund more than $1,000. Moreover, the evidence does not show that all interested parties knew that appellant used the fund for personal expenses. Appellant listed the expenses on

the January 2013 form that he filed with the auditor, but did not list the FOJ fund as a creditor when he filed his 2012 financial disclosure statement. Thus, we find *Truckey* inapposite.

**{¶65}** We likewise find *Baumgarden* unpersuasive. In *Baumgarden*, the checks always were recorded on the company's books. None of the evidence established that the defendant kept his use of company funds secret for any length of time. In the case sub judice, however, even if appellant eventually listed the expenses on his annual report submitted to the county auditor, none of the evidence suggests that before that disclosure, appellant's personal use of the FOJ fund was readily detectable or recorded as part of an official financial record.

**{¶66}** We believe that *Agee* also is inapposite. In that case, the court determined that the state did not prove that the defendant failed to properly report her income. By contrast, in the case at bar, the state presented evidence that appellant's 2012 financial disclosure statement did not list the FOJ fund as a creditor. Thus, the case at bar does not involve a complete lack of proof. Instead, this case is about whether the evidence that the state submitted demonstrates that appellant had a purpose to defraud or knew that he facilitated a fraud.

{¶67} We agree with the state and the trial court that the facts in the case at bar are more closely aligned with *State v. Burge*, 9th Dist. Lorain No. 16CA010936, 2017-Ohio-5836, 2017 WL 3026471. In *Burge*, the defendant, a judge, filed financial disclosure forms that failed to list a bank as a creditor, a business that he and his wife owned, and his ownership interest in commercial property. The state presented evidence to show that the defendant had approved appointed counsel fees for two attorneys who rented office space in the defendant's commercial property. One attorney testified at trial that the attorney would have been unable to pay rent if he did not make money. The state later charged appellant with several criminal offenses, including tampering with records. A jury subsequently found the defendant guilty of three counts of tampering with records and three counts of falsification.

{¶68} After his conviction, the defendant appealed and asserted, in part, that the state failed to present sufficient evidence to support his tampering with records conviction. The appellate court did not agree with the defendant. Instead, the court concluded that, viewing the evidence "in a light most favorable to the State," shows "that any rational trier of fact could have found beyond a reasonable doubt that [the defendant] was guilty of tampering with records in violation of R.C.

2913.42(A)(1)." *Id.* at ¶ 36. The court continued that if the factfinder believed the evidence, the evidence demonstrated that the defendant "knowingly obtained a benefit for himself, namely a revenue stream for tenants of the commercial building for which he was the primary guarantor." *Id.* The court further determined that the evidence also established that the defendant "obtained this benefit through deception, namely by purposely not disclosing the requisite information on his 2011, 2012, and 2013 financial disclosure forms which would have placed the public on notice that he had a potential conflict of interest with certain criminal defense attorneys." *Id.* The court thus affirmed the defendant's tampering with records conviction.

**{¶69}** Similarly, in the case at bar appellant filed a financial disclosure statement that failed to list the FOJ fund as a creditor. He obtained a benefit by spending money that he otherwise would have been unable to spend (appellant had informed investigators that he used the FOJ fund when he did not have enough money in his personal accounts) and obtaining an interest-free loan from the FOJ fund. By failing to list the FOJ fund as a creditor on his financial disclosure statement, appellant avoided Ohio Ethics Commission scrutiny and possible criminal or civil liability or disciplinary actions. Even though the record does not contain direct evidence that

appellant intended to defraud, the facts and circumstances allowed the factfinder to determine that appellant possessed an intent to defraud. *State v. Bergsmark*, 6th Dist. Lucas No. L-03-1137, 2004-Ohio-5753, 2004 WL 2426236, ¶ 24, quoting *State v. Lee* (Nov. 23, 1983), 4th Dist. No. 82 X 16 ("To have purpose to defraud, 'one must merely knowingly intend to obtain some benefit or cause some detriment to another by way of deception.'").

**{¶70}** We therefore do not agree with appellant that the state failed to present sufficient evidence to support his tampering with records conviction. Additionally, because sufficient evidence supports appellant's tampering-with-records conviction, any error the court may have committed by finding appellant guilty of the merged offense, forgery, is harmless. Thus, we need not consider appellant's assignment of error as it relates to the forgery offense.

**{¶71}** Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

VINTON, 20CA723

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Vinton County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of 60 days upon the bail previously posted.  The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court.  The stay as herein continued will terminate at the expiration of the 60-day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the 45-day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court.  Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J., Abele, J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
    Jason P. Smith, Presiding Judge

BY:_____
    Peter B. Abele, Judge

BY:_____
    Michael D. Hess, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.